UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

| | |
|---|---|
| James Paul Aery, | Civ. No. 22-CV-00491 (PJS/TNL) |
| Plaintiff, | **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| Kyle Nohre, Individual and Official Capacity; and Beltrami County, | |
| Defendants. | |

_____

## INTRODUCTION

Defendants Kyle Nohre and Beltrami County (hereinafter referred to collectively as "Defendants") respectfully submit this Memorandum of Law in Support of their Motion for Summary Judgment. It is undisputed that Plaintiff has not, and cannot, establish that Defendant Nohre violated his Fourth Amendment rights on April 22, 2019. Likewise, Plaintiff cannot establish his purported Monell claim against Defendant Beltrami County. Further, even if Plaintiff could establish his claims – which is not conceded – Defendant Nohre is entitled to qualified immunity on Plaintiff's claims. For these reasons, and as articulated below, Defendants respectfully request this Court dismiss Plaintiff's claims with prejudice.

## ISSUES

1. Whether Defendant Nohre is entitled to Summary Judgment on Plaintiff's Fourth Amendment unreasonable seizure claim?

2. Whether Defendant Beltrami County is entitled to Summary Judgment on Plaintiff's Monell claim?

1

    3.      Whether Defendant Nohre is entitled to qualified immunity?

## STATEMENT OF UNDISPUTED FACTS

On April 21, 2019, Beltrami County Sheriff's Deputies were dispatched to search for a stolen John Deere Gator. Exhibit A (BCSO incident reports) (all exhibits are attached to the Affidavit of Dyan J. Ebert). Deputies searched the area and observed UTV tracks but did not locate the vehicle at that time. Id. Also at this time, Defendant Nohre made contact with the complainant, Jacob Burgoon, by phone and gathered additional information relating to the stolen UTV. Id. Additionally, once he arrived on scene, Defendant Nohre made contact with Jesse Jacobson and Barry Jacobson who are nearby residents in the area where the stolen UTV was last seen. Id. The Jacobsons informed Defendant Nohre that although they did not witness anything firsthand, Barry Jacobson's ex-girlfriend had been hanging out with Plaintiff in the area. Id. Defendant Nohre and other Beltrami County Sheriff's Office Deputies are familiar with Plaintiff, as he is a known drug user and violent person. Id. Despite Deputies' efforts, the stolen UTV was not located on April 21, 2019. Id.

The following morning, on April 22, 2019, at approximately 1:18 a.m., Beltrami County Sheriff's Office Deputies were again dispatched to the area to search for the stolen UTV, as the caller reported seeing the stolen vehicle again. Id. Eventually, Deputies observed the vehicle being driven through the woods. Id. Deputies pursued the UTV and located it abandoned in the woods. Id. Following this, Deputies set a perimeter in the area, as the driver of the stolen UTV abandoned it and fled the scene on foot. Id.

To assist with the search, Defendant Nohre arrived on scene with his canine, Mac. Id. Defendant Nohre and Mac hold certifications as a police utility dog team and narcotics detections through the North American Police Work Dog Association. Id. Part of training as a utility dog includes Mac being trained and certified in tracking/trailing, article searches, and apprehension. Id. To help locate the driver of the stolen UTV, Defendant Nohre circled Mac around the recovered UTV to locate fresh human odor with the goal of tracking and locating the driver. Id. Defendant Nohre and Mac then tracked Plaintiff's scent through an area between a residence and a steep drop off to a swampy area. Id. At this time, Mac also was able to locate Plaintiff's cell phone that had apparently been abandoned or dropped as Plaintiff was fleeing from the Deputies. Id. Eventually, Mac and Defendant Nohre located Plaintiff in some down trees in the area. Id. Deputy Brian Birt then placed Plaintiff under arrest. Id. During his initial contact with Plaintiff, Defendant Nohre was unable to tell whether Plaintiff had been bit but knew that Mac was not actively holding onto Plaintiff when Plaintiff was located. Id. Mac remained on a leash the entire time he and Defendant Nohre were tracking Plaintiff. Id.

Following his arrest, Plaintiff was transferred to Sanford emergency room and medically cleared. Id. Thereafter, Plaintiff was transferred and booked into the Beltrami County Jail for being in possession of a stolen motor vehicle, fleeing in a motor vehicle, driving after revocation, fleeing on foot, and for an outstanding felony warrant for 5th degree narcotics possession. Id.

Still on April 22, 2019, Sergeant Samuel Lundquist photographed Plaintiff's shoulder, as Plaintiff claimed that Mac had bitten him there. Id. It is clear from the

3

photographs that Plaintiff was not bitten by Mac. See Exhibit B (NOHRE-2405-2407). Further, Plaintiff was wearing a plaid shirt when he was arrested. Ex. A. No rips, tears, or punctures can be observed in the area where Plaintiff claims he was bitten by Mac. See id.; Exhibit C (NOHRE-2409-2415). Moreover, Plaintiff admitted to running through thick brush on April 21, 2019, which resulted in numerous scratches and marks on his body. Ex. A; Exhibit D (NOHRE-2408). Also, the Minnesota Bureau of Criminal Apprehension's Pursuit Report indicates Plaintiff suffered "no injury" as a result of this arrest. Ex. A.

## STANDARD ON MOTION FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides that:

> Summary Judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Fed. R. Civ. P. 56.

The United States Supreme Court has clarified the standard for granting of summary judgment in three cases: Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); and Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The plain language of Rule 56 mandates the entry of summary judgment when:

> [A]fter adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on

> which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

Celotex, 477 U.S. at 322-23. Summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Id. at 327.

A party moving for summary judgment bears the initial responsibility of informing the Court of the bases for its motion and identifying those portions of the file which it believes will demonstrate the absence of any genuine issue of material fact. Id. at 323. Although a party moving for summary judgment has the burden of showing that there is no genuine issue of fact, the plaintiff is not relieved of his own burden of producing in turn, affirmative evidence that would support a jury verdict in his favor. Anderson, 477 U.S. at 256–57.

## ARGUMENT

**I. DEFENDANT NOHRE IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S FOURTH AMENDMENT UNREASONABLE SEIZURE CLAIM.**

**A. It is undisputed that Plaintiff was seized on April 22, 2019.**

The Fourth Amendment protects the "right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Accordingly:

> A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, by means of physical force or show of authority, terminates or restrains his freedom of movement through means intentionally applied [to that person]. Thus, an unintended person may be the object of the detention, so long as the detention is willful and not merely the consequence of an unknowing act.

Brendlin v. California, 551 U.S. 249, 254, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007) (cleaned up). A seizure occurs when a person is "stopped by the very instrumentality set in motion or put in place in order to achieve that result." Brower v. Cty. of Inyo, 489 U.S. 593, 599, 109 S.Ct. 1378, 103 L.Ed.2d 628 (1989). To determine if a person is seized, the Court must determine: (1) whether "the means that terminates the freedom of movement is the very means that the government intended," and (2) whether the person whose freedom of movement is terminated is the very person that the government intended. Collins v. Schmidt, 326 F.Supp.3d 733 (D. Minn. 2018) (quotations omitted).

Here, it is undisputed that when Plaintiff was located and detained on April 22, 2019, Plaintiff was seized within the meaning of the Fourth Amendment.

**B.    Plaintiff's seizure on April 22, 2019, was reasonable.**

As noted above, it is undisputed Plaintiff was seized on April 22, 2019, when he was located by Deputies. Therefore, the second inquiry for this Court is whether Plaintiff's arrest and subsequent seizure on April 22, 2019, was reasonable. Plaintiff purportedly bases his entire action against Defendants on the unfounded contention that he was bitten by Mac. See Exhibit E (Plaintiff's Complaint). However, contrary to Plaintiff's claim, the record is clear that he was not bitten by Mac on April 22, 2019.

6

Notably, Plaintiff has not produced any evidence – beyond his self-serving opinion – that he was bitten by Mac, which is fatal to his claims. See Exhibit F (Plaintiff's Responses to Defendants' Requests for Production of Documents); Henthorn v. Capitol Communications, Inc., 359 F.3d 1021, 1026 (8th Cir. 2004) ("Mere allegations not supported with specific facts are insufficient to establish a material issue of fact and will not withstand a summary judgment motion."); see also Krenik v. County of LeSueur, 47 F.3d 953, 957 (8th Cir. 1995) (noting to successfully oppose a motion for summary judgment and to create a dispute on a genuine issue of material fact, the plaintiff must present sufficient evidence for a reasonable jury to return a verdict in his favor).

On the other hand, Defendants have produced evidence and documentation, including the Beltrami County Sheriff's Office's incident reports from April 21, 2019, and April 22, 2019, and the photographs of Plaintiff's shoulder and clothing (which are being provided herein), sufficiently establishing no genuine issues of material fact exist as to whether or not Plaintiff was bitten by Mac. See Exs. A, B, and C. Further, Plaintiff appears to rely upon these photographs and incident reports to argue that Mac bit Plaintiff despite such evidence conclusively establishing that Mac did not bite Plaintiff. See Exhibits G, H, and I (Defendants' Request for Admissions, Plaintiff's Responses to Defendants' Request for Admissions, and Plaintiff's Responses to Defendants' Interrogatories).

Since the record is clear that it is undisputed that Mac did not bite Plaintiff, and for purposes of this motion, the Court must only determine whether Defendant Nohre's conduct on April 22, 2019, of tracking and locating Plaintiff, was reasonable. The

7

undisputed evidence supports Defendants' position that Defendant Nohre's conduct on April 22, 2019, was reasonable.

In determining whether a seizure is reasonable, this Court must weigh "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Howard v. Kan. City Police Dep't, 570 F.3d 984, 989 (8th Cir. 2009) (quoting Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). Further, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396, 109 S.Ct. 1865. "Governmental interests include 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight.'" Collins, 326 F.Supp.3d at 741 (quoting Graham, 490 U.S. at 396, 109 S.Ct. 1865).

Here, the undisputed material facts establish that Defendant Nohre did not violate Plaintiff's Fourth Amendment rights on April 22, 2019, when he located and detained Plaintiff. Specifically, the record shows that Beltrami County Sheriff's Office Deputies were pursuing an individual who, by his own admission, was fleeing on both a motor vehicle and on foot. See Exhibit J (Nohre bodycam); Ex. E; Foster v. Metropolitan Airports Comm., 914 F.2d 1076, 1082 (8th Cir. 1990) ("When an arrestee flees or resists, some use of force by the police is reasonable."). Deputies also knew that Plaintiff may be the suspect they were pursuing based upon the Jacobson's conversation with Defendant Nohre. Concerningly, Plaintiff is well-known to Beltrami County Sheriff's Office

8

Deputies as a drug user and violent person. Ex. A. Further, Deputies, including Defendant Nohre, were objectively reasonable in assuming that the driver of the stolen UTV who had just recently abandoned the vehicle and was fleeing on foot would likely be hiding in the woods and would be located within the perimeter the Deputies had set. Likewise, Deputies had sufficient probable cause to ultimately arrest Plaintiff once he was apprehended and located as he had just committed multiple criminal offenses. Id.; see also Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001) (noting that once an officer has arguable probable cause to arrest for committing a criminal offence, any arrest or detention is, as a matter of law, reasonable).

Moreover, here, Plaintiff does not appear to even claim that Defendant Nohre used any excessive force against him – beyond his unfounded claim that Mac bit him – nor does Plaintiff purportedly dispute that his arrest was reasonable. See Chambers v. Pennycook, 641 F.3d 898, 906 (8th Cir. 2011) (noting a Fourth Amendment claim must be based upon more than a *de minimis* use of force); Elkins v. U.S., 364 U.S. 206, 218, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960) ("[A]s a practical matter it is never easy to prove a negative"). Even if Plaintiff were to argue that Defendant Nohre's use of Mac on April 22, 2019, was unreasonable, that contention alone does not amount to a Fourth Amendment violation. See e.g., U.S. v. Lyons, 486 F.3d 367, 373 (8th Cir. 2007) ("Absent police misconduct, the instinctive actions of a trained canine do not violate the Fourth Amendment."); Dennen v. City of Duluth, 350 F.3d 786 (affirming district court's denial of Plaintiff's section 1983 claim and determining officer's decision to use a canine without a leash was objectively reasonable). Accordingly, Defendant Nohre's conduct of

9

seizing Plaintiff on April 22, 2019, was objectively reasonably based upon the totality of the circumstances and, therefore, Plaintiff's Fourth Amendment claim must be dismissed with prejudice. See Graham, 490 U.S. at 396-97 (noting reasonableness of a seizure is determined by the totality of the circumstances and must be judged from the viewpoint of a reasonable officer on the scene, irrespective of the officer's underlying intent or motivation).

## II. DEFENDANT BELTRAMI COUNTY IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S PURPORTED MONELL CLAIM.

Plaintiff claims Defendant Beltrami County violated his constitutional rights by failing to properly train and/or supervise Defendant Nohre. See generally Ex. E. To maintain a Monell claim against Defendant Beltrami County for failure to train and/or supervise, Plaintiff must show a constitutional violation by Defendant Nohre. See Sanders v. City of Minneapolis, 474 F.3d 523, 527 (8th Cir. 2007). "Section 1983…creates a private right of action to vindicate violations of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." Rehberg v. Paulk, 132 S. Ct. 1497, 1501 (2012) (quoting Imbler v. Pachtman, 424 U.S. 409, 417 (1976)). "To state a claim under [42 U.S.C. § 1983], a plaintiff must allege (1) that the defendant acted under color of state law, and (2) that the alleged conduct deprived the plaintiff of a constitutionally protected right." Novotny v. Tripp County, 664 F.3d 1173, 1177 (8th Cir. 2011) (citing Van Zee v. Hanson, 630 F.3d 1126, 1128 (8th Cir. 2011)). As noted above, the undisputed material facts conclusively establish that Defendant Nohre did not violate any of Plaintiff's constitutional rights, therefore, Defendant Beltrami County is not liable

under Monell. Accordingly, Plaintiff's claims against Defendant Beltrami County must be dismissed.

In the alternative, Defendant Beltrami County can only be liable under § 1983 if a "municipal custom or policy caused the deprivation of the right protected by the constitution or federal law." Angarita v. St. Louis Cnty., 981 F.2d 1537, 1546 (8th Cir. 1992) (citing Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 690-91 (1978)). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011) (citing City of Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985)). For a failure-to-train claim to be successful against a municipality, the failure to train must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." Connick, 131 S. Ct. at 1359. "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Id. at 1360.

Further, "[f]or a municipality to be liable, a plaintiff must prove that municipal policy or custom was the 'moving force [behind] the constitutional violation.'" Mettler v. Whitledge, 165 F.3d 1197, 1204 (8th Cir. 1999). The Eighth Circuit does not use the terms "policy" and "custom" interchangeably. Id. at 1204. "[A] 'policy' is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." Id. On the other hand, to establish a municipal custom, Plaintiff must satisfy three requirements:

    (1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

    (2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

    (3) Th[e] plaintiff['s] injur[y] by acts pursuant to the governmental entity's custom, i.e., [proof] that the custom was the moving force behind the constitutional violation.

Id. (quotation omitted).

Here, Plaintiff has failed to produce any evidence of a Beltrami County Sheriff's Office policy resulting in violations of his constitutional rights. To the contrary, in his discovery responses, Plaintiff makes broad and conclusory statements regarding multiple Beltrami County Sheriff's Office policies he claims Defendant Nohre violated on April 22, 2019, (and, notably, wholly fails to cite to any policy in his Complaint), which is insufficient to establish a Monell claim. See generally Ex. H; see also Szabla v. City of Brooklyn Park, 486 F.3d 385, 393 (8th Cir. 2007) (noting a policy will not give rise to liability under Monell unless it is in contravention of clearly established law). Further, Plaintiff wholly fails to articulate *how* Defendant Nohre's conduct on April 22, 2019, violated any of the policies he arbitrarily mentions in his discovery responses, which is likewise detrimental to his claim. Liggins v. Morris, 749 F.Supp. 967, 971 (D. Minn. 1990) ("Constitutional claims brought under 42 U.S.C. § 1983 are discrete claims and as such should not be pled in this shotgun manner.") Notably, again, Plaintiff appears to rely on his unfounded allegation that Mac bit him to argue that Defendant Nohre violated

these policies. For these reasons, Plaintiff has not, and cannot, establish his Monell claim against Defendant Beltrami County.

Moreover, Plaintiff also states in his discovery responses that Defendant Beltrami County encourages "a custom of aggression and does so to this day." Ex. H. Plaintiff also claims Defendant Beltrami County has a "custom of ignoring complaints and not having a readily available form handy for inmates to submit to the appropriate party for review is propagation of abuse and exhibits a pattern and practice of covering/protecting illicit acts by the officials within BCSO." Id. However, again, Plaintiff does not expand on these conclusory allegations, nor does he cite to prior situations that would in some way support or suggest a continuing, widespread, persistent pattern of unconstitutional misconduct by Beltrami County Sheriff's Office employees and, notably, admits he has never been bitten or in any way injured by a Beltrami County canine. Ex. H; see, e.g., City of Canton v. Harris, 489 U.S. 378, 385 (1989) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policy maker."); Thelma D. ex rel. Delores A. v. Board of Education, 934 F.2d 929, 933 (8th Cir. 1991) (noting the lack of a pattern of unconstitutional misconduct effectively ends the Court's inquiry); Mettler, 165 F.3d 1197 (holding that seven unsustained complaints against one officer involved in the incident and one sustained complaint (out of two) against the other was not sufficient to establish a persistent pattern). Further, the record is completely devoid of any evidence

showing Defendant Beltrami County could have possibly reached the level of "deliberate indifference" as it relates to the training and/or supervision of Defendant Nohre.

Plaintiff has not, and cannot, create a genuine issue of material fact regarding the existence of any unconstitutional custom, practice, or policy of Defendant Beltrami County. Mere allegations without factual proof cannot support a claim for improper custom or policy. Because Plaintiff fails to allege an unconstitutional act attributable to an unconstitutional Beltrami County custom, practice, or policy, Plaintiff's section 1983 claims against Defendant Beltrami County must be dismissed.

### III.  PLAINTIFF'S CLAIMS MUST BE DISMISSED ON THE BASIS OF QUALIFIED IMMUNITY.

Even assuming that Defendant Nohre's conduct caused some deprivation of Plaintiff's constitutional rights – which is denied – Defendant Nohre is nonetheless entitled to qualified immunity on Plaintiff's section 1983 claims. An officer sued under section 1983 is entitled to qualified immunity "unless their conduct violates a clearly established right of which a reasonable official would have known." Burnikel v. Fong, 886 F.3d 706, 709 (8th Cir. 2018). Whether qualified immunity is proper and applicable is a question of law. Moore v. Indehar, 514 F.3d 756, 764 (8th Cir. 2008). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." Stanton v. Sims, 571 U.S. 3, 134 S.Ct. 3, 5, 187 L.Ed.2d 341 (2013) (quotations omitted). A Court must deny a summary judgment motion based on qualified immunity if: "(1) the evidence, viewed in the light most favorable to [the non-movant], establishes a

violation of a constitutional or statutory right, and (2) the right was clearly established at the time of the violation, such that a reasonable offic[er] would have known that his actions were unlawful." Blazek v. City of Iowa City, 761 F.3d 920, 922-23 (8th Cir. 2014). However, if either of those factors cannot be met, qualified immunity applies, and the motion should be granted. See id.

Qualified immunity is necessary to shield "the public from unwarranted timidity on the part of public officials" and to avoid "dampen[ing] the ardour of all but the most resolute, or the most irresponsible." Richardson v. McKnight, 521 U.S. 399, 408 (1997). To achieve its purpose, the doctrine "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Hunter v. Bryant, 502 U.S. 224, 229 (1991) (quotations omitted). This inquiry focuses on the objective legal reasonableness of the action, not the state of mind or good faith of the officials in question. Anderson v. Creighton, 483 U.S. 635, 638-39 (1987). Thus, to withstand a motion for summary judgment on qualified immunity grounds, a plaintiff must show that: (1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation. Pearson v. Callahan, 555 U.S. 223, 232 (2009).

    A.    **No Violation of a Constitutional Right Occurred.**

Here, Plaintiff is asserting a violation of his Fourth Amendment rights. Accordingly, this Court's initial inquiry is whether the undisputed material facts support Plaintiff's contention that Defendant Nohre violated his Fourth Amendment right to be

free from unreasonable seizures on April 22, 2019. As an initial matter, the Supreme Court has noted that a warrantless arrest of an individual in a public place upon probable cause does not violate the Fourth Amendment. See United States v. Watson, 423 U.S. 411, 423-24, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976); see also Borgman v. Kedley, 646 F.3d 518, 522–23 (8th Cir. 2011) ("A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause, and an officer is entitled to qualified immunity if there is at least 'arguable probable cause.'") (quotation omitted); Beck v. Ohio, 379 U.S. 89, 91-92, 85 S. Ct. 223, 225-26 (1964) (noting probable cause exists when the totality of the circumstances demonstrates that a prudent person would believe that the suspect has committed or was committing a crime).

When the defense of qualified immunity is raised, a court must consider this threshold question: "Taken in the light most favorable to the person alleging injury, do the facts alleged show that the officers' conduct violated a constitutional right?" See Saucier v. Katz, 533 U.S. 194, 201 (2001). If no constitutional right has been violated there is no further inquiry concerning qualified immunity. Id. As analyzed above, it is undisputed that Defendant Nohre's conduct on April 22, 2019, was reasonable in light of the totality of the circumstances. For these reasons, Defendant Nohre is entitled to qualified immunity, and Plaintiff's claims must be dismissed.

    **B.    The Constitutional Right Must be Clearly Established.**

Since there was no violation of a constitutional right here, any argument the unknown constitutional right was clearly established is futile. However, if the Court determines Defendant Nohre did violate Plaintiff's constitutional rights, it was not clearly

established on April 22, 2019, that such actions would violate Plaintiff's constitutional rights.

For a right to be clearly established, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson, 483 U.S. at 640. Here, Plaintiff did not have a clearly established right to flee from Deputies after committing multiple criminal offenses. See Littrell v. Franklin, 388 F.3d 578, 582-83 (8th Cir. 2004) (noting the second part of qualified immunity analysis – whether right was clearly established – is a fact intensive inquiry and must be undertaken in light of specific context of case; reasonableness of particular use of force must be judged from perspective of reasonable officer on scene and not with 20/20 hindsight, and must take into account fact that uncertain, and rapidly evolving circumstances). A reasonable deputy in Defendant Nohre's position would not have believed that Plaintiff's constitutional rights were violated by locating and detaining Plaintiff prior to his arrest after Plaintiff committing criminal offenses and fled police on a motor vehicle and on foot. See Hunter v. Bryant, 502 U.S. 224, 228 (1991) (noting a defendant is entitled to immunity from suit if any reasonable officer could have believed that his actions were lawful in light of clearly established law and the information that he possessed at the time he acted, regardless of whether a jury might decide that his actions were actually lawful); Ginter v. Stallcup, 869 F.2d 385, 387 (8th Cir. 1989) (noting if a reasonable officer could have believed that his conduct was lawful, then dismissal is mandatory). For these reasons, Defendant Nohre is entitled to qualified immunity, and Plaintiff's claims must be dismissed with prejudice.

## **CONCLUSION**

Based on the foregoing, Defendants respectfully request summary judgment be granted in its entirety and that Plaintiff's claims be dismissed with prejudice.

QUINLIVAN & HUGHES, P.A.

Dated: December 5, 2022

/s/Dyan J. Ebert
Dyan J. Ebert #0237966
Elle M. Lannon #0400873
Attorneys for Defendants
PO Box 1008
St. Cloud, MN  56302-1008
(320) 251-1414
debert@quinlivan.com
elannon@quinlivan.com