## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

James Paul Aery,

        Plaintiff,

v.

Kyle Nohre,
*Individual & Official Capacity*, and
Beltrami County,

        Defendants.

Case No. 22-cv-491 (PJS/TNL)

**ORDER**

James Paul Aery, General Delivery, Bemidji, MN 56601 (pro se Plaintiff); and

Dyan J. Ebert and Elle M. Lannon, Quinlivan & Hughes, PA, P.O. Box 1008, St. Cloud, MN 56302-1008 (for Defendants).

    This matter comes before the Court on pro se Plaintiff James Paul Aery's Motion to Compel, ECF No. 36.  Relevant to the discussion below, Plaintiff was granted leave to proceed *in forma pauperis* ("IFP") in this matter.  *See generally* ECF No. 3.

### I. FAILURE TO COMPLY WITH LOCAL RULE 37.1

    In an Order dated August 5, 2022, the Court previously reminded Plaintiff "that his pro se status does not excuse him from complying with all applicable rules, laws, orders of the Court, and the like in this case."  ECF No. 35 at 1.  *See, e.g.*, *Soliman v. Johanns*, 412 F.3d 920, 922 (8th Cir. 2005) ("Even pro se litigants must comply with court rules and directives."); *Bennett v. Dr. Pepper/Seven Up, Inc.*, 295 F.3d 805, 808 (8th Cir. 2002) (pro se status does not entitle litigant to disregard Federal Rules of Civil Procedure or court's

1

local rules); *Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984) ("[P]ro se litigants are not excused from failing to comply with substantive and procedural law."); *see also* ECF No. 19 at 3 ("As Plaintiff is presently representing himself, he is reminded of the need to obtain and review a copy of the Federal Rules of Civil Procedure and the Local Rules for the United States District Court for the District of Minnesota.").  And, as particularly relevant here, the Court expressly reminded Plaintiff that D. Minn. Local Rule 37.1 requires that a motion to compel contain "the text (which may appear in an exhibit to which the motion or memorandum refers) of any interrogatory, request, question, or notice in dispute, together with each answer, response, or objection to any such interrogatory, request, question, or notice."  ECF No. 35 at 8 (quoting D. Minn. LR 37.1(c)).  Denying Plaintiff's prior motion to compel without prejudice, the Court noted that Plaintiff had "not specified, identified, or attached the particular discovery requests in dispute" and the Court was "left to guess at the form and substance of the discovery requests propounded by Plaintiff; how Defendants responded to those requests; and what about Defendants' responses Plaintiff contend[ed was] insufficient, evasive, incomplete, or otherwise improper."  ECF No. 35 at 8 (quotation and citation omitted).

Several of the discovery disputes at issue in Plaintiff's motions appear to arise out of some sort of request served by Plaintiff on Defendants.  Yet, Plaintiff has again failed to include "the text (which may appear in an exhibit to which the motion or memorandum refers) of any [applicable] interrogatory, request, question, or notice in dispute, together with each answer, response, or objection to any such interrogatory, request, question, or notice."  D. Minn. LR 37.1(c).  Based on Plaintiff's failure to comply with Local Rule 37.1

and the Court's prior Order, the Court would be within its discretion to summarily deny Plaintiff's motion. *See* D. Minn. LR 1.3 (sanctions may be imposed for rule violations); *see also* ECF No. 35 at 9-10 (sanctions for failure to comply with Order).

Defendants have, however, provided copies of the text of certain of Plaintiff's discovery requests and their responses, and so the Court will elect to address the disputed discovery to the extent possible based on the record before the Court. *See Haddley v. Next Chapter Tech., Inc.*, No. 16-cv-1960 (DWF/LIB), 2018 WL 2180253, at *2-3 (D. Minn. Mar. 23, 2018).

## II. MOTION TO COMPEL

Plaintiff's motion implicates the Court's broad discretion in handling pretrial procedure and discovery. *See, e.g.*, *Hill v. Sw. Energy Co.*, 858 F.3d 481, 484 (8th Cir. 2017) ("A district court has very wide discretion in handling pretrial discovery . . . ." (quoting *United States ex rel. Kraxberger v. Kansas City Power & Light Co.*, 756 F.3d 1075, 1082 (8th Cir. 2014)); *Solutran, Inc. v. U.S. Bancorp*, No. 13-cv-2637 (SRN/BRT), 2016 WL 7377099, at *2 (D. Minn. Dec. 20, 2016) ("Further, magistrate judges 'are afforded wide discretion in handling discovery matters and are free to use and control pretrial procedure in furtherance of the orderly administration of justice.'" (internal quotation marks omitted) (quoting *Favors v. Hoover*, No. 13-cv-428 (JRT/LIB), 2013 WL 6511851, at *3 n.3 (D. Minn. Dec. 12, 2013)).

In general, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1). "Some threshold showing of relevance must be made[, however,]

before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992). Further, "[t]he parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes." *Vallejo v. Amgen, Inc.*, 903 F.3d 733, 742 (8th Cir. 2018) (quoting Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment). "[A] court can—and must—limit proposed discovery that it determines is not proportional to the needs of the case." *Id.* (quotation omitted); *see* Fed. R. Civ. P. 26(b)(2)(C)(iii). Considerations bearing on proportionality include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1); *see also Vallejo*, 903 F.3d at 742-43.

Under Rule 37, "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection." Fed. R. Civ. P. 37(a)(3)(B). "[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). "A document filed pro se is to be liberally construed." *Olsen as Tr. for Xurex, Inc. v. Di Mase*, 24 F.4th 1197, 1202 (8th Cir. 2022) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), *reh'g denied*, No. 20-2771, 2022 WL 780571 (8th Cir. Mar. 15, 2022).

In brief, Plaintiff requests that the Court (1) compel Defendants to clarify the number of individuals Defendant Kyle Nohre's canine has bitten; (2) provide Plaintiff with

4

a subpoena to obtain his medical records; (3) compel Defendants to define "serious offense" as used in Policy 318.6 of the Beltrami County Sheriff's Office; (4) compel Defendant Beltrami County to institute "a policy change requiring announcement of a canine regularly at 25 yard intervals rural, or less than 1 city block in urban areas," Pl.'s Mot. at 5; (5) compel Defendants to define "aggressively enforce laws" and "explain the major goal of aggressively enforce[ing] laws as used in the policy," Pl.'s Mot. at 6; (6) explain why shift-sergeant approval was not needed; (7) compel Defendant Nohre to "honestly answer" an interrogatory, Pl.'s Mot. at 7; (8) compel Defendant Nohre to "give full disclosure of his reasoning for not having and/or activating his body worn camera," Pl.'s Mot. at 7-8; (9) provide Plaintiff with a subpoena to depose Brian Birt; and (10) compel Defendants to produce the map used on the date in question as well as the "lumens of [the] flashlight used and the weather conditions including moon phase," Pl.'s Mot. at 11. Plaintiff also seeks sanctions and an extension of the fact discovery deadline.

## A. Discovery Sought

### 1. Number of Individuals Bitten by Defendant Nohre's Canine

Plaintiff asserts that "Defendant Nohre has stated his canine Mac has bitten 3-4 suspects," and, "[w]hen asked to clarify the number of people[, Defendant Nohre] has been unwilling to do so." Pl.'s Mot. at 1. Plaintiff requests that the Court compel Defendant Nohre "to provide details on all incidents of suspects being bit which is directly related to the type of disregard in this case where [Defendant] Nohre is denying his canine bit me." Pl.'s Mot. at 1.

Defendants respond that, during the parties' meet-and-confer, they "*agreed* to

supplement their . . . [prior] discovery response to provide an exact number."  Defs.' Mem. in Opp'n at 3, ECF No. 41.  Defendants contend that, "[d]espite reaching an agreement on a resolution to this discovery issue," Plaintiff filed the instant motion to compel "the following week" without "provid[ing] Defendants any time to satisfy their duty to supplement their discovery responses."  Defs.' Mem. in Opp'n at 3.  Indeed, Plaintiff's motion is dated two days after the parties' meet-and-confer took place and was received by the Court less than one week later.

To the extent Plaintiff requests that Defendant Nohre clarify the number of people bitten by Mac, his motion is denied as moot as Defendants have already agreed to provide this information.  To the extent Plaintiff requests that Defendants "provide details on all incidents of suspects being bit" by Mac, his motion is denied without prejudice as, based on the record before the Court, this information was not the subject of the original discovery request propounded by Plaintiff.  *See* Ex. 1 at 5 to Decl. of Elle M. Lannon, ECF No. 42-1 ("Interrogatory No. 7: How many times[,] as a canine team, have you allowed a suspect to be bit?").[1]  The Court will, however, permit Plaintiff to serve one additional request for production on Defendants within 30 days from the date of this Order seeking this information.

### 2.  Subpoena Medical Records

In the Complaint, Plaintiff alleges that Defendant Nohre "was malicious and negligent when he allowed his [canine] to inflict demonstrable harm to [Plaintiff]."  ECF

---

[1] *See supra* Section I.

No. 1 at 4.  Plaintiff further alleges that this was an "unprovoked attack."  ECF No. 1 at 6.

Plaintiff asserts that Defendant Nohre "disputes Plaintiff was bit" and Defendants have claimed that "photos show scratches but no bites."  Pl.'s Mot. at 2.  Plaintiff asserts that "[t]he hospital E.R. at Sanford Bemidji saw [him] for [a] canine bite," he "was given a shot," and "pictures of the bite and other separate injuries were taken."  Pl.'s Mot. at 2.  Plaintiff states that he has "no way to currently get said medical records."  Pl.'s Mot. at 2.  Plaintiff further states that he has "signed releases for [d]efense counsel who refuse to acquire [the] records" and "sent requests for medical records from Sanford with no reply."  Pl.'s Mot. at 2-3.  Plaintiff requests that the Court "provide [him] a subpoena to obtain records from Sanford and [a] deposition of Nohre and [a] medical professional to determine expert opinions."  Pl.'s Mot. at 3.  In the alternative, Plaintiff requests that the Court "require Defendants [to] seek and provide [his] medical records and retain an impartial medical expert to verify pictures['] content to determine definitively."  Pl.'s Mot. at 3.

Defendants respond that "Plaintiff cites to no precedent or rule permitting this Court to compel Defendants to collect evidence on Plaintiff's behalf, nor does Plaintiff's [IFP] status entitle[] him to request this Court—or Defendants—retain an expert or conduct discovery on Plaintiff's behalf."  Defs.' Mem. in. Opp'n at 4.

Rule 34(c) of the Federal Rules of Civil Procedure provides that "a nonparty may be compelled to produce documents" as set forth in Rule 45; *see generally* Fed. R. Civ. P. 45(a)(1)(A)(iii).  Rule 45(d) provides that a party "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."  Fed. R. Civ. P. 45(d)(1).  The Court "must enforce this duty."  Fed. R. Civ. P. 45(d)(1); *see, e.g., Mays v.*

*Sherburne Cty. Jail*, No. 20-cv-506 (PAM/KMM), 2020 WL 4218806, at *4 (D. Minn. July 23, 2020) ("Under Rule 45(d), when a subpoena is issued to a third party, the court is required to enforce a party's duty to limit imposing undue burden or expense on the person subject to the subpoena.").  "The Court has the 'discretionary power to refuse to subpoena witnesses and to prevent abuse of its process in both civil and criminal proceedings.'" *Stockdale v. Stockdale*, No. 4:08-CV-1773 CAS, 2009 WL 4030758, at *1 (E.D. Mo. Nov. 18, 2009 (quoting *Manning v. Lockhart*, 623 F.2d 536, 539 (8th Cir. 1980) (per curiam)); *see also Jeude v. Ste. Genevieve Memorial Hosp.*, No. 1:22-CV-151-SNLJ, 2022 WL 17583149, at *3 (E. D. Mo. Dec. 12, 2022) (court "has discretion whether to grant or deny subpoenas for indigent parties").  "Courts exercising inherent supervisory power over [IFP] subpoenas generally consider factors such as the relevance and materiality of the information requested and the necessity of the particular testimony or documents to proving the indigent's case."  *Stockdale*, 2009 WL 4030758, at *1; *see also, e.g.*, *Jeude*, 2022 WL 17583149, at *3; *Mays*, 2020 WL 4218806, at *4.  And, because the IFP statute does not mandate the payment of discovery costs, courts also consider whether "the plaintiff is able to pay any [attendant] costs."  *Mays*, 2020 WL 4218806, at *4; *see also, e.g.*, *Wilmas v. Renshaw*, No. 4:20-cv-01020-SEP, 2021 WL 1546142, at *2 (E.D. Mo. Apr. 20, 2021) ("[W]hen reviewing subpoenas directed to nonparties, a court should also examine issues related to the expected compliance costs in light of Rule 45's provision that nonparties be protected against significant expense."); *Smith v. Ladner*, No. 3:19-CV-243-HTW-LRA, 2020 WL 3260426, at *1 (S.D. Miss. July 2, 2020) ("[An IFP] plaintiff should only be entitled to subpoena documents from non-parties after the Court determines the

relevancy of the requested documents and the ability of the plaintiff to pay any related costs or fees."). "The Court may deny a request for a subpoena if it is frivolous, immaterial, unnecessary, unduly burdensome, would result in costs the indigent cannot provide, or is otherwise unreasonable." *Jeude*, 2022 WL 17583149, at *3.

The Court is satisfied that Plaintiff's medical records for treatment he received related to the incident in question are relevant. There are, however, at least two problems with Plaintiff's current request to subpoena the Sanford facility. First, Plaintiff has not articulated the date range of the medical records he is seeking. Plaintiff has not provided the Court with any of his prior requests to the Sanford facility, which might indicate the time period for which records are being sought, and Plaintiff's Complaint refers to the incident in question only as having occurred in "[s]pring of 2019." ECF No. 1 at 4. Without some sort of indication as to the date range of the medical records Plaintiff seeks, the Court is unable to determine whether the records sought are proportional to the needs of the case or would result in an undue burden. *See* Fed. R. Civ. P. 26(b)(1), 45(d)(2).

Second, there is no information in the record before the Court indicating that Plaintiff would be able to pay the costs for copying and providing any of the medical records he seeks. In fact, Plaintiff states that he asked Defendants to obtain the records in light "of the burden on [him]." Pl.'s Mot. at 3. "The intent of Rule 45 is to prevent shifting litigation costs to a non-party." *Smith*, 2020 WL 3620426, at *2. As the undersigned and other magistrate judges in this District have repeatedly told Plaintiff,

> "[n]othing in the IFP statute requires the Court to pay a party's
> discovery costs." *Janetta v. Minn. Dep't of Human Servs.*, No.
> 19-cv-2622 (ECT/TNL), 2020 WL 4593816, at *1 (D. Minn.

9

Aug. 11, 2020) (citing *Mays v. Sherburne Cty. Jail*, No. 20-cv-506 (PAM/KMM), 2020 WL 4218806, at *4 (D. Minn. July 23, 2020)).  IFP status "does not include the right to receive funds from the court to pay discovery or other costs relating to a pro se litigant's case."  *Lightfeather v. Osborn*, No. 4:20CV3118, 2021 WL 107141, at *3 (D. Neb. Jan. 12, 2021), *appeal dismissed*, No. 21-1646, 2021 WL 4240975 (8th Cir. Apr. 1, 2021).

ECF No. 34 at 2-3, *report and recommendation adopted*, ECF No. 37; *see also Aery v. Billings*, No. 21-cv-2422 (PJS/JFD), slip op. at 2 (D. Minn. July 20, 2022); *Aery v. Lewis*, No. 22-cv-12 (KMM/BRT), slip op. at 1-2 (D. Minn. July 20, 2022).   Thus, notwithstanding his IFP status, Plaintiff remains "responsible for tendering any payment required for the" medical records he seeks.  *Powell v. City of Elko*, No. 3:21-cv-00418-ART-CSD, 2022 WL 4588931, at *2 (D. Nev. Sept. 28, 2022).

Therefore, Plaintiff's request for the issuance of a subpoena to Sanford to obtain his medical records is denied without prejudice.  The Court will, however, permit Plaintiff to refile a motion to subpoena such records within 30 days from the date of this Order.  Any future request to subpoena medical records from Sanford must include the following information: (1) the name and address of the person or entity that Plaintiff seeks to serve; (2) identification, including date range, of the particular medical records Plaintiff seeks; (3) an explanation of how such records are relevant to the issues in this case; and (4) an explanation of how Plaintiff will pay any necessary costs of obtaining the records or, in the alternative, written confirmation from Sanford that no payment will be required.  This will also provide notice to Defendants of the information that Plaintiff is seeking.  *See* Fed. R. Civ. P. 45(a)(4).

To the extent Plaintiff seeks to compel the deposition of Defendant Nohre, have a medical expert provided to him, or require Defendants to obtain his medical records and retain a medical expert on his behalf, Plaintiff's motion is denied.  It is not apparent to this Court what, if any, connection there is between Defendant Nohre and Plaintiff's medical records.  Nor does the Court have the "authority to appoint an expert witness at government expense for a civil litigant, even an indigent one." *Hestdalen v. Corrizon Corr. Healthcare*, No. 2:18-cv-00039-JAR, 2020 WL 418544, at *1 (E.D. Mo. Jan. 27, 2020) (citing *Grace v. Hakala*, No. 1:11CV81 LMB, 2012 WL 2190902, at *3 (E.D. Mo. June 14, 2012)).  "Neither the Court nor defendants are required to pay for a plaintiff's expert witness." *Id.*; *see also, e.g.*, *Porter v. Dep't of Treasury*, 564 F.3d 176, 180 n.3 (3d Cir. 2009) ("[T]he granting of IFP status exempts litigants from filing fees only.  It does not exempt litigants from the costs of copying and filing documents; service of documents other than the complaint; costs; expert witness fees; or sanctions."  (citations omitted)).

### 3.  Define "Serious Offense"

In Interrogatory No. 1, Plaintiff requested that Defendants "[d]efine 'serious offense' as used in apprehension guidelines Policy 318.6 of the Beltrami County Sheriff's Office."[2]  Ex. 1 at 3 to Lannon Decl.  Subject to certain objections, Defendants responded

> that § 318.6 (NOHRE-0107) is to be read as a whole and not interpreted in piecemeal fashion.  Defendants further answer that "serious offense" is to be broadly interpreted, and its interpretation is dependent on varying factual scenarios and events Beltrami County Sheriff's Office employees face on a day-to-day basis as contemplated by § 318.6 and additional polices.

---

[2] *See supra* Section I.

11

Ex. 1 at 3 to Lannon Decl.

Plaintiff asserts that Defendants' response is insufficient and evasive. Plaintiff requests that Defendants be compelled "to expand on their answer"; articulate "whether or not the situation of a not actively fleeing suspect is to be considered grounds to apprehend a suspect and locate"; and explain whether the "certain other conditions that must exist under [Policy] 318.6 in addition to a 'serious offense'" were also present. Pl.'s Mot. at 3-4. Defendants state that "[b]eyond providing a straightforward dictionary definition of 'serious offense,' [they] have sufficiently responded." Defs.' Mem. in Opp'n at 6. Defendants additionally state that Plaintiff's request that they be ordered to expand on their answer is more properly the subject of further discovery, rather than a motion to compel.

Plaintiff's motion is granted in part with respect to Interrogatory No. 1. The Court agrees that Defendants did not define "serious offense" as that term is used in Police 318.6, but instead provided things upon which the definition was dependent. Within 14 days from the date of this Order, Defendants shall supplement their response to Interrogatory No. 1 to define the term "serious offense" as used in Policy 318.6.

Plaintiff's motion is denied without prejudice in part as to his request that Defendants be ordered to expand their response to address "whether or not the situation of a not actively fleeing suspect is to be considered grounds to append a suspect and locate" and to explain whether the "certain other conditions that must exist under [Policy] 318.6 in addition a 'serious offense'" were also present. Defendants are correct that this information was not part of the initial interrogatory. The Court will, however, permit Plaintiff to serve

12

two additional interrogatories on Defendants within 30 days from the date of this Order addressing these two topics.

### 4.  Implement Policy Change

Plaintiff requests that the Court compel Defendants to implement "a policy change requiring announcement of a canine regularly at 25 yard intervals rural, or less than 1 city block in urban areas."  Pl.'s Mot. at 5.  This is not the type of relief a party may seek in a motion to compel.  *See* Fed. R. Civ. P. 37(a)(1) ("party may move for an order compelling disclosure or discovery"), (3)(A) (disclosures required by Fed. R. Civ. P. 26(a), (B) (discovery responses).  Plaintiff's motion is therefore denied as to the implementation of a change in policy.

### 5.  Define "Aggressively Enforce Laws"

In Interrogatory No. 9, Plaintiff requested that Defendants "[d]efine 'aggressively enforce laws' as used in BCSO Policy Manual Mission Statement Major Goals.  (What is the definition?)."[3]  Ex. 1 at 5 to Lannon Decl.  Subject to certain objections, Defendants responded that "the phrase 'aggressively enforce laws' is self-explanatory."  Ex. 1 at 5 to Lannon Decl.

Plaintiff asserts that "[s]elf-explanatory is not a definition."  Pl.'s Mot. at 6.  The Court agrees.  Plaintiff's motion is granted to the extent that, within 14 days from the date of this Order, Defendants shall supplement their response to Interrogatory No. 9 to define what "aggressively enforce laws" means "as used in BCSO Policy Manual Mission

---

[3] *See supra* Section I.

Statement Major Goals."  Ex. 1 at 5 to Lannon Decl.

To the extent Plaintiff requests that Defendants be compelled to "explain the major goal of aggressively enforc[ing the] laws as used in the policy," Pl.'s Mot. at 6, his motion is denied without prejudice.  Similar to the additional information Plaintiff sought in connection with Interrogatory No. 1, *see supra* Section II.A.3, this information was not part of the initial interrogatory.  The Court will, however, permit Plaintiff to serve one additional interrogatory on Defendants within 30 days from the date of this Order asking this question.

### 6.  Explain Why Shift-Sergeant Approval Not Needed

In Interrogatory No. 8, Plaintiff asked Defendants "[w]ho was the shift sergeant who approved the locate and apprehend canine use."[4]  Ex. 1 at 5 to Lannon Decl.  Subject to certain objections, Defendants responded that "Sergeant Samuel Lundquist was present on April 22, 2019," and "Shift Sergeant approval pursuant to § 318.6 (NOHRE-0107-0108) was not required on April 22, 2019."  Ex. 1 at 5 to Lannon Decl.

Plaintiff asserts that "Defendants state that approval of Shift Sergeant Samuel Lundquist was not required yet do not explain [the] reasoning for this."  Pl.'s Mot. at 6. Plaintiff requests that Defendants be compelled "to explain why under Policy 318.6 no approval was needed."  Pl.'s Mot. at 6.  Plaintiff's motion is denied without prejudice as to this request.  Again, the information Plaintiff seeks to compel was not part of his initial interrogatory.   The Court will, however, permit Plaintiff to serve one additional

---

[4] *See supra* Section I.

interrogatory on Defendants within 30 days from the date of this Order asking this question.

### 7.  "Honest" Answer to Interrogatory

In Interrogatory No. 3, Plaintiff asked "[w]hat reason did you have for swearing at me so aggressively and vulgarly?"[5]   Ex. 1 at 4 to Lannon Decl.   Subject to certain objections, Defendants "den[ied] Defendant Nohre was aggressive or vulgar towards Plaintiff on April 22, 2019.   Defendants further answer[ed that] Defendant Nohre's interactions with Plaintiff on April 22, 2019 [we]re documented in Defendant Nohre's Report 1 and Follow up 1, see NOHRE-2364-2366 and NOHRE-2369."   Ex. 1 at 4 to Lannon Decl.

Plaintiff asserts that "[o]n the bodycam video[,] you can clearly hear Nohre yelling at me to show him my 'f***ing hands' several times very excitably."   Pl.'s Mot. at 6. Plaintiff requests that Defendant Nohre be compelled to "honestly answer [the] interrogatory" and that Defendants be sanctioned with "an adverse inference" for lying. Pl.'s Mot. at 7.

Plaintiff's motion is denied as to this request.   "Plaintiff's challenge to [Defendants'] interrogatory answer[] boils down to a disagreement with the substance of [the] answer[] . . . ."   *Richard v. Dignean*, 332 F.R.D. 450, 460 (W.D. N.Y. 2019).   That Plaintiff may "quibble[e] with the veracity" of Defendants' response is "not a basis for a motion to compel."   *Hickman v. Silva*, No. CA C-12-209, 2012 WL 4973041, at *2 (S.D. Tex. Oct. 17, 2012); *see also, e.g.*, *Bradford v. Owens*, No. 3:22CV-P488-S, 2014 WL 3513182, at

---

[5] *See supra* Section I.

*2 (W.D. Ky. July 14, 2014) ("Plaintiff's disagreement with Defendant's response is not a foundation for granting a motion to compel."); *Grant v. Target Corp.*, No. 2:10-CV-823, 2013 WL 571845, at *9 (S.D. Ohio Feb. 13, 2013) ("[A] motion to compel is not the correct way for Mr. Grant to argue about the factual accuracy of Target's responses."); *Stukes v. Chertoff*, No. 3:06CV316-R, 2008 WL 178468, at *1 (W.D. N.C. Jan. 18, 2008) ("[D]isagreement with the substance of the Defendant's responses does not constitute a factual basis for a meritorious Motion to Compel as a matter of law."). "The purpose of a motion to compel discovery is not to challenge the truthfulness of the response but rather to compel a party to *answer* the interrogatory. [Defendants] ha[ve] done that, so there is nothing for the court to compel." *Stewart v. Cap. Newspapers, Inc.*, No. 09-CV-554-SLC, 2010 WL 1508289, at *3 (W.D. Wis. Apr. 14, 2010).

### 8.   Defendant Nohre's Bodycam Video

There is no dispute that there is no bodycam video from Defendant Nohre regarding the incident in question.  *See* Pl.'s Mot. at 7-8; Defs.'s Mem. in Opp'n at 9-10.  Plaintiff asserts that the absence of any bodycam video from Defendant Nohre is either spoliation of evidence "or intentional[] . . . malice aforethought due to the situation so obviously being adversarial that activating bodycam would be required under policy."  Pl.'s Mot. at 7. According to Plaintiff, Defendant Nohre "should produce descriptive reasoning for not producing video."  Pl.'s Mot. at 7.  Plaintiff requests that Defendant Nohre be compelled "to give full disclosure of his reasoning for not having and/or activating his body worn camera."  Pl.'s Mot. at 7.  Plaintiff additionally requests, that "if [Defendant Nohre] admits, or it is further possible he could have been wearing one, that a log for devices be provided

16

to determine if greater discovery needs to be done and this be done by the Bureau of Criminal Apprehension for outside review."  Pl.'s Mot. at 7.

Defendants respond that "there is no body worn camera footage for this Court to compel Defendants to produce because Defendant Nohre, and the Beltrami County Sheriff's Office as a whole, did not implement body worn cameras until after April 22, 2019." Defs.' Mem. in Opp'n at 9.   Defendants further state that, among other things, they previously provided Plaintiff with "body worn camera footage from one officer that was present for Plaintiff's April 22, 2019[] arrest."  Defs.' Mem. in Opp'n at 10.   Defendants explain that "[i]n April 2019, the Beltrami County Sheriff's Office was engaged in 'trial runs' with body worn cameras, so a select few employees would occasionally wear body worn cameras.   The Beltrami County Sheriff's Office did not implement body worn cameras for all employees until after April 22, 2019."   Defs.' Mem. in Opp'n at 10. Defendants reiterate that no such footage exists.

This is another instance in which Plaintiff is attempting to compel information that, as best as this Court was able to tell, was not part of the initial discovery request. Accordingly, Plaintiff's motion is denied without prejudice to the extent he requests that the Court compel Defendant Nohre to explain why he personally did not have bodycam video of the incident in question.   The Court will, however, permit Plaintiff to serve one additional interrogatory on Defendants within 30 days from the date of this Order asking Defendant Nohre to explain why he did not have/and or activate his body-worn camera during the incident in question.

### 9.  Subpoena Brian Birt

Plaintiff requests a subpoena to depose Brian Birt, who Plaintiff asserts "was there that night."  Pl.'s Mot. at 9.  Plaintiff explains that he wants Birt to "expand on his view on the issue at hand of what he heard and saw besides just bodycam as he was a witness potentially able to add to the proof."[6]  Pl.'s Mot. at 9-10.   Defendants respond that Plaintiff's request to subpoena Birt "should be denied because he has not made a formal request for a subpoena, nor has he articulated how the information known to Birt is relevant and likewise fails to establish [he] can pay the costs associated with the subpoena."  Defs.' Mem. in Opp'n at 10.

The information before the Court is that Birt was a witness to the incident in question.  As such, he is likely to have discoverable information relevant to the claims and defenses in this case.  That being said, similar to Plaintiff's request to subpoena medical records, there is no indication in the record before the Court that Plaintiff would be able to pay the fees associated with deposing Birt.  Under Rule 45, "[s]erving a subpoena requires delivering a copy to the named person and, *if the subpoena requires that person's attendance, tendering the fees for 1 day's attendance and the mileage allowed by law*."  Fed. R. Civ. P. 45(b)(1) (emphasis added); *see generally* 28 U.S.C. § 1821.  An IFP "plaintiff . . . must pay witness and mileage fees himself."  *Grace*, 2012 WL 2190902, at *6; *see Powell*, 2022 WL 4588931, at *2 (IFP status "does not waive the payment of any

---

[6] Birt's connection to the incident in question other than as a witness to what occurred has not been explained by the parties.  According a liberal construction to Plaintiff's argument that he wants to ask Birt what "he heard and saw besides just bodycam," Pl.'s Mot. at 10, and in light of Defendants' statement that "body worn camera footage from one officer that was present for Plaintiff's April 22, 2019[] arrest" was provided, Defs.' Mem. in Opp'n at 9-10, the Court surmises that Birt was this officer.

applicable fees or expenses for witnesses"); *see also, e.g.*, *Lightfeather*, 2021 WL 107141, at *3; *Janetta*, 2020 WL 4593816, at *1.

Therefore, Plaintiff's request for the issuance of a subpoena to depose Birt is likewise denied without prejudice. The Court will, however, permit Plaintiff to refile a motion to subpoena the deposition of Birt within 30 days from the date of this Order. Any future request to subpoena the deposition of Birt must include the following information: (1) Birt's name and address; (2) a description of the information/testimony Plaintiff seeks from Birt; (3) an explanation of how such information/testimony is relevant to the issues in this case; and (4) an explanation of how Plaintiff will pay the associated costs.

### 10. Map Used, Lumens of Flashlight, Weather Conditions & Moon Phase

Plaintiff served requests for production on Defendants seeking "electronic and paper copies of the topographical/satellite map information used by sheriff's deputies during the use of [the canine]" to search for him; "the flashlight 'Lumens' make & model of both officers present at [his] arrest that night"; and the "weather conditions that night," including "[h]umidity, cloud cover, [and] moon phase."[7] Ex. 2 at 3 to Lannon Decl., ECF No. 42-1. Subject to certain objections, Defendants responded that they were "not in possession of documents responsive" to each of these requests. Ex. 2 at 3 to Lannon Decl. As to the request seeking information related to the flashlights used by Defendant Beltrami County's law-enforcement officers, Defendants additionally responded "that the Beltrami County Sheriff's Office issues its officers the Fenix PD35 V3.0 Flashlight." Ex. 2 at 3 to Lannon

---

[7] *See supra* Section I.

Decl.

Plaintiff asserts that "Defendants refuse to provide [the] map used by [the] officers, lumens of [the] flashlight[s] used[,] and the weather conditions including moon phase for [the] date in question." Pl.'s Mot. at 11. Plaintiff requests an order directing "Defendants to cooperate with these [d]iscovery requests." Pl.'s Mot. at 11.

A party cannot be compelled to produce what it does not have. *See, e.g.*, *Edeh v. Equifax Info. Servs., LLC*, 291 F.R.D. 330, 337 (D. Minn. 2013) ("Here, Equifax maintains that it does not have the documents requested in Requests for Production Nos. 3 and 4. If Equifax does not have the documents in its possession, custody, or control, it cannot be compelled to produce them."); *see also Farmers Ins. Exch. v. West*, No. 11-cv-2297 (PAM/JJK), 2012 WL 12894845, at *5 (D. Minn. Sept. 21, 2012) ("Of course, the Court cannot order any party to produce something in discovery that does not, in fact, exist."). "The Court must accept, at face value, a party's representation that it has fully produced all materials that are discoverable." *Bombardier Recreational Prods., Inc., v. Arctic Cat, Inc.*, No. 12-cv-2706 (MJD/LIB), 2014 WL 5685463, at *7 (D. Minn. Sept. 24, 2014) (quotation omitted)). Plaintiff's motion is therefore denied as to these requests.

## B. Sanctions

Plaintiff seeks sanctions against Defendants "to provide punitive reasoning to not delay or evade [d]iscovery in this or other cases we are involved in." Pl.'s Mot. at 11. When a motion to compel is granted in part and denied in part as the Court has done here, Rule 37(a)(5)(C) of the Federal Rules of Civil Procedure states that the Court "may . . . apportion the reasonable expenses for the motion." It is also within the Court's discretion

to sanction a party under Rule 37.  *See generally* Fed. R. Civ. P. 37(c)(1), (d).

As noted at the outset, Plaintiff's motion to compel did not comply with Local Rule 37.1 despite the Court's prior admonishment.  Further, for the reasons stated above, most of what Plaintiff sought to compel was not the proper subject of a motion to compel. Therefore, Plaintiff's request for sanctions is denied.

### C. Extension of Fact Discovery

Lastly, Plaintiff requests an extension of the fact discovery deadline by "an additional 3 months . . . or whatever reasonable time to obtain results."  Pl.'s Mot. at 10. Defendants oppose Plaintiff's request.

Rule 16(b)(4) of the Federal Rules of Civil Procedure states that "[a] schedule may be modified only for good cause and with the judge's consent."  *See also* D. Minn. LR 16.3(b)(1).  The Court does not find good cause for a blanket extension of the fact discovery deadline as requested by Plaintiff.  Thus, Plaintiff's motion is denied in part as to a general extension of fact discovery.  In light of Plaintiff's pro se status, the Court does, however, find good cause for a *limited* extension of the fact discovery deadline as to the additional request for production and interrogatories permitted herein, *see supra* Section II.A.1, .3, .5, .6, .8, and the refiling of any motion(s) to subpoena Plaintiff's medical records and depose Birt, *see supra* Section II.A.2, .9.  Plaintiff's motion is therefore granted in part as to this limited extension.  This limited extension shall be confined to the specific discovery and 30-day time limit set forth herein.

## III. ORDER

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1. Plaintiff's Motion to Compel, ECF No. 36, is **GRANTED IN PART** and **DENIED IN PART** as set forth herein.

2. **Within 14 days from the date of this Order**, Defendants shall supplement their responses to Interrogatory Nos. 1 and 9.

3. **Within 30 days from the date of this Order**, Plaintiff may serve an additional request for production and the interrogatories authorized herein.

4. **Within 30 days from the date of this Order**, Plaintiff may refile any motion(s) to subpoena his medical records and/or depose Birt.

5. In light of the supplementation ordered, any response by Plaintiff to Defendants' Motion for Summary Judgment, ECF No. 49, is extended to **January 17, 2023**.

6. All prior consistent orders remain in full force and effect.

7. Failure to comply with any provision of this Order or any other prior consistent Order shall subject the non-complying party, non-complying counsel and/or the party such counsel represents to any and all appropriate remedies, sanctions and the like, including without limitation: assessment of costs, fines and attorneys' fees and disbursements; waiver of rights to object; exclusion or limitation of witnesses, testimony, exhibits and other evidence; striking of pleadings; complete or partial dismissal with prejudice; entry of whole or partial default judgment; and/or any other relief that this Court may from time to time deem appropriate.

Dated: December___20___, 2022

_____*s/ Tony N. Leung*_____
Tony N. Leung
United States Magistrate Judge
District of Minnesota

*Aery v. Nohre et al.*
Case No. 22-cv-491 (PJS/TNL)

22