## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

James Paul Aery,                                  Case No. 22-cv-491 (PJS/TNL)

      Plaintiff,

v.                                                        **REPORT &**
                                                          **RECOMMENDATION**

Kyle Nohre,
*Individual & Official Capacity*, and
Beltrami County,

      Defendants.

James Paul Aery, Beltrami County Jail, 626 Minnesota Avenue Northwest, Bemidji, MN 56601 (pro se Plaintiff); and

Dyan J. Ebert and Elle M. Lannon, Quinlivan & Hughes, PA, P.O. Box 1008, St. Cloud, MN 56302 (for Defendants).

## I. INTRODUCTION

This matter is before the Court on Defendants Kyle Nohre and Beltrami County's Motion for Summary Judgment, ECF No. 49. This motion has been referred to the undersigned for a report and recommendation to the district court, the Honorable Patrick J. Schiltz, Chief District Judge for the United States District Court for the District of Minnesota, under 28 U.S.C. § 636 and D. Minn. LR 72.1. ECF No. 56.

Based upon the record, memoranda, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendants' motion be **DENIED IN PART** as to Plaintiff's excessive force claim against Defendant Nohre in his individual capacity and

1

**GRANTED IN PART** as to Plaintiff's claims against Defendant Nohre in his official capacity and Defendant Beltrami County.

## II. BACKGROUND

Pro se Plaintiff James Paul Aery brings this action under 42 U.S.C. § 1983 for alleged violations of his constitutional rights based on Defendant Nohre's use of a canine in apprehending him. *See generally* Compl., ECF No. 1 at 4-6. Plaintiff alleges that Defendant Nohre did not announce the presence of the canine and allowed the canine to "attack" him, resulting in physical and emotional harm. Compl., ECF No. 1 at 4-6. Defendant Nohre is employed as a deputy sheriff by Defendant Beltrami County. Compl., ECF No. 1 at 4.

On April 21, 2019, law enforcement received a report of a stolen John Deere Gator vehicle. *See generally* Ex. A to Aff. of Dyan J. Ebert, ECF No. 52-1 at 31. Shortly before midnight, deputies with Defendant Beltrami County, including Defendant Nohre, were dispatched to follow up on a call that the stolen vehicle had been spotted in the area and was being driven by a man "wearing a hooded sweatshirt with the hood drawn very tight around his head." Ex. A to Ebert Aff., ECF No. 52-1 at 8, 9, 11, 13. The deputies were unable to locate the vehicle. Ex. A to Ebert Aff., ECF No. 52-1 at 8, 9, 11, 13.

During this time, Defendant Nohre spoke with a citizen (not the initial caller) whom he observed outside of his residence. Ex. A to Ebert Aff., ECF No. 52-1 at 13. Defendant Nohre explained "the reason [he] was in the area," and the citizen told him that he had seen the vehicle "a couple of different times earlier" in the day and that it was being driven by a man with "a hooded sweatshirt with the hood drawn tightly around his

head." Ex. A to Ebert Aff., ECF No. 52-1 at 13.

While Defendant Nohre was speaking with the citizen, the citizen's father came out. Ex. A to Ebert Aff., ECF No. 52-1 at 13. The citizen's father "advised [Defendant Nohre that] he had not seen anything." Ex. A to Ebert Aff., ECF No. 52-1 at 13. The citizen's father then offered that "his ex . . . had been hanging out with [Plaintiff]." Ex. A to Ebert Aff., ECF No. 52-1 at 13. The citizen's father stated that Plaintiff "is not welcome on the property and he has had to kick him out of there before." Ex. A to Ebert Aff., ECF No. 52-1 at 13. Plaintiff is familiar to law enforcement in Defendant Beltrami County as "a known drug user and violent person." Ex. A to Ebert Aff., ECF No. 52-1 at 13; *see also* Ex. A to Ebert Aff., ECF No. 52-1 at 11.

Just over an hour or so later, around 1:15 a.m. on April 22, 2019, the initial caller reported that the stolen vehicle had been spotted again. Ex. A to Ebert Aff., ECF No. 52-1 at 8, 9, 11, 13. Deputies with Defendant Beltrami County, including Defendant Nohre and his canine Mac, responded to the scene. Ex. A to Ebert Aff., ECF No. 52-1 at 8, 9, 11, 13.

One of the deputies was positioned at an intersection with his patrol vehicle "blacked out." Ex. A to Ebert Aff., ECF No. 52-1 at 9. As the deputy observed the stolen vehicle drive towards him, he turned on his headlights. Ex. A to Ebert Aff., ECF No. 52-1 at 9; *see also* Ex. A to Ebert Aff., ECF No. 52-1 at 11. The stolen vehicle continued to drive towards the deputy. Ex. A to Ebert Aff., ECF No. 52-1 at 9. The deputy "activated [his] emergency lights in an attempt to initiate a traffic stop" of the stolen vehicle. Ex. A to Ebert Aff., ECF No. 52-1 at 9. The stolen vehicle made "a sharp

3

left turn . . . into the woods." Ex. A to Ebert Aff., ECF No. 52-1 at 9; *see also* Ex. A to Ebert Aff., ECF No. 52-1 at 8, 13. The deputy attempted to follow the stolen vehicle into the woods with his patrol vehicle until the trail was no longer passable and then continued on foot. Ex. A to Ebert Aff., ECF No. 52-1 at 9; *see also* Ex. A to Ebert Aff., ECF No. 52-1 at 11.

During this pursuit, the deputy "hear[d] the [vehicle] crash into the woods and then come to a stop." Ex. A to Ebert Aff., ECF No. 52-1 at 9. A perimeter was established while the search for the stolen vehicle continued. Ex. A to Ebert Aff., ECF No. 52-1 at 9; *see also* Ex. A to Ebert Aff., ECF No. 52-1 at 8. The pursuing deputy then heard the stolen vehicle "running in the distance." Ex. A to Ebert Aff., ECF No. 52-1 at 9. The deputy was eventually able to locate the stolen vehicle, but it was unoccupied. Ex. A to Ebert Aff., ECF No. 52-1 at 9; *see also* Ex. A to Ebert Aff., ECF No. 52-1 at 8, 11, 14.

Defendant Nohre and Mac arrived at the stolen vehicle. Ex. A to Ebert Aff., ECF No. 52-1 at 14. Defendant Nohre and Mac "hold certifications as a police dog utility team and [in] narcotics detections." Ex. A to Ebert Aff., ECF No. 52-1 at 14. Mac is trained and certified in tracking, article searches, and apprehension. Ex. A to Ebert Aff., ECF No. 52-1 at 14. Defendant Nohre led Mac around the stolen vehicle "to locate fresh human odor." Ex. A to Ebert Aff., ECF No. 52-1 at 14.

Mac then began to track the scent through the woods. Ex. A to Ebert Aff., ECF No. 52-1. At one point, Mac began circling around a tree and eventually "downed." Ex. A to Ebert Aff., ECF No. 52-1 at 14. Defendant Nohre recovered a cell phone on the

4

ground "[b]etween Mac's paws . . . ."  Ex. A to Ebert Aff., ECF No. 52-1 at 14; *see also*
Ex. A to Ebert Aff., ECF No. 52-1 at 11.  Defendant Nohre advised other deputies of his
location and one of them took custody of the cell phone.  Ex. A to Ebert Aff., ECF No.
52-1 at 9, 14; *see also* Ex. A to Ebert Aff., ECF No. 52-1 at 11; Ex. J to Ebert Aff. at
3:01-21.[1]

Defendant Nohre, Mac, and another deputy continued tracking, around a horse
pasture and ultimately "towards a large embankment leading down to a swamp."  Ex. A
to Ebert Aff., ECF No. 52-1 at 14; *see also* Ex. A to Ebert Aff., ECF No. 52-1 at 11; Ex. J
to Ebert Aff. at 3:25-10:56.  "The brush became more thick" as Defendant Nohre and
Mac continued along the embankment.  Ex. A to Ebert Aff., ECF No. 52-1 at 14.

Mac went "sharply to the left which created some slack in [Defendant Nohre's]
tracking line."  Ex. A to Ebert Aff., ECF No. 52-1 at 14.  Defendant Nohre pointed his
flashlight "towards the area where Mac was running and observed some down brush."
Ex. A to Ebert Aff., ECF No. 52-1 at 14.  Defendant Nohre "also noticed some light
colored cloth that appeared mostly covered up."  Ex. A to Ebert Aff., ECF No. 52-1 at 14;
*see also* Ex. H to Ebert Aff., ECF No. 52-8 at 1; Ex. I to Ebert Aff., ECF No. 52-9 at 14.[2]
As "Mac neared the brush pile," Defendant Nohre "heard a male party yell and . . . pulled

---

[1] Exhibit J to the Ebert Affidavit contains the bodycam footage of another deputy from the events in question.  Ebert Aff. ¶ 11.  There is no such footage available from Defendant Nohre.  *See* ECF No. 57 at 16-17.

[2] In support of their motion for summary judgment, Defendants have filed Plaintiff's responses to their requests for production, requests for admissions, and interrogatories.  Ebert Aff. ¶¶ 7, 9, 10; *see generally* Ex. F to Ebert Aff., ECF No. 52-6; Ex. H to Ebert Aff., ECF No. 52-8; Ex. I to Ebert Aff., ECF No. 52-9.  Only with respect to their requests for admissions did Defendants provide a copy of the discovery request propounded along with Plaintiff's response thereto, thereby providing to the Court the necessary context for Plaintiff's responses.  *Compare generally* Ex. G to Ebert Aff., ECF No. 52-7, *with* Ex. H to Ebert Aff., ECF No. 52-8.  Absent the necessary context for the responses to the requests for production and interrogatories propounded by Defendants, Plaintiff's responses alone have limited value.

back on Mac's leash."  Ex. A to Ebert Aff., ECF No. 52-1 at 14; *see also* Ex. I to Ebert

Aff., ECF No. 52-9 at 14.

Defendant Nohre "was unable to tell if the subject [individual] had been bit," but

knew, "due to line tension," that "Mac was not actively holding on to the subject

[individual]."  Ex. A to Ebert Aff., ECF No. 52-1 at 14.  Defendant Nohre shined his light

on the man and directed the man, Plaintiff, to put his hands up.  Ex. A to Ebert Aff., ECF

No. 52-1 at 14; *see also* Ex. A to Ebert Aff., ECF No. 52-1 at 11; Ex. J to Ebert Aff. at

10:55-11:06.  Plaintiff complied.  Ex. A to Ebert Aff., ECF No. 52-1 at 14.

Plaintiff was placed under arrest.  Ex. A to Ebert Aff., ECF No. 52-1 at 11; *see*

*also* Ex. J to Ebert Aff. at 11:28-44.  At numerous points, Plaintiff told the deputies that

he had been bitten by Mac.  *See, e.g.*, Ex. J to Ebert Aff. at 11:13-15, 11:24-25, 14:00-

02,45-48; Ex. A to Ebert Aff., ECF No. 52-1 at 8, 11, 14; *see also, e.g.*, Ex. J to Ebert

Aff. at 17:09-13, 46-52.

When asked by Defendant Nohre where he had been bitten, Plaintiff responded his

shoulder.  Ex. A to Ebert Aff., ECF No. 52-1 at 14.  A sergeant took custody of Plaintiff

and observed "a small abrasion" at the scene.  Ex. A to Ebert Aff., ECF No. 52-1 at 8.

The sergeant then transported Plaintiff to the emergency room to be cleared by medical

personnel.  Ex. A to Ebert Aff., ECF No. 52-1 at 8; *see also* Ex. A to Ebert Aff., ECF No.

52-1 at 11, 14; Ex. H to Ebert Aff., ECF No. 52-8 at 1.  Upon further inspection, the

sergeant "located two small abrasions on [Plaintiff's] right shoulder," which were

photographed.  Ex. A to Ebert Aff., ECF No. 52-1 at 8; *see* Ex. B to Ebert Aff., ECF No.

52-2 at 1-3; *see also* Ex. A to Ebert Aff., ECF No. 52-1 at 11, 14; Ex. H to Ebert Aff.,

ECF No. 52-8 at 1.  The sergeant also observed "a large number of small cuts and scratches on [Plaintiff's] forearms," injuries which Plaintiff reported he received "the previous day, while running through the woods and a swamp."  Ex. A to Ebert Aff., ECF No. 52-1 at 8; *see* Ex. D to Ebert Aff., ECF No. 52-4 at 1; *see also* Ex. A to Ebert Aff., ECF No. 52-1 at 11.  Once Plaintiff was medically cleared, he was taken to jail.  Ex. A to Ebert Aff., ECF No. 52-1 at 8, 14.

Around 6:00 p.m. the same day, Defendant Nohre followed up with Plaintiff.  Ex. A to Ebert Aff., ECF No. 52-1 at 18.  Plaintiff "was still in a holding tank from the night before and wearing some of his street clothes."  Ex. A to Ebert Aff., ECF No. 52-1 at 18. Defendant Nohre "did not observe any rips, tears or punctures in the area where [Plaintiff] claimed he was bit by [Mac]."  Ex. A to Ebert Aff., ECF No. 52-1 at 18. Plaintiff showed Defendant Nohre the abrasions that had been previously photographed, and Defendant Nohre "did not observe any apparent changes to the abrasions" or "any punctures or drag marks which are typically apparent from a canine apprehension."  Ex. A to Ebert Aff., ECF No. 52-1 at 18.  When talking with Defendant Nohre, Plaintiff "stated his shoulder did not hurt" and similarly "spoke about being [i]n extremely thick brush the night before which is why he had all the scratches and marks on his arms."  Ex. A to Ebert Aff., ECF No. 52-1 at 18.  Defendant Nohre also examined and photographed "the plaid shirt [Plaintiff] was wearing at the time of his arrest."  Ex. A to Ebert Aff., ECF No. 52-1 at 18; *see* Ex. C to Ebert Aff., ECF No. 52-3 at 1-7.  Defendant Nohre did not observe any "rips, tears, or punctures," nor did he observe "any damage indicative of being apprehended by a canine" in the right shoulder and sleeve area.  Ex. A to Ebert

Aff., ECF No. 52-1 at 18.

## III. ANALYSIS

Defendants move for summary judgment on Plaintiff's claims. Plaintiff did not respond to Defendants' motion.[3]

### A. Legal Standard

Under Rule 56(a), courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *accord Gannon Int'l, Ltd. v. Blocker*, 684 F.3d 785, 792 (8th Cir. 2012). "If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial." *Gannon Int'l*, 684 F.3d at 792. This is true of pro se litigants as well. *Beck v. Skon*, 253 F.3d 330, 333 (8th Cir. 2001) ("Like any other civil litigant, [the pro se plaintiff] was required to respond to defendants' motions with specific factual support for his claims to avoid summary judgment."); *see also, e.g.*, *Quam v. Minnehaha Cty. Jail*, 821 F.2d 522, 522 (8th Cir. 1987) (per curiam) ("Although Quam is entitled to the benefit of a liberal construction of his pleadings

---

[3] The Court's Pretrial Scheduling Order set forth the deadline by which a party needed to respond to a dispositive motion. ECF No. 19 at 2. As the Court has reminded Plaintiff, "his pro se status does not excuse him from complying with all applicable rules, laws, orders of the Court, and the like in this case." ECF No. 35 at 1-2; *cf.* ECF No. 57 at 1-3; ECF No. 40 at 1-2 & n.1. And, for the reasons stated in the Order issued today, the Court has denied Plaintiff's months-belated extension request.

8

because of his pro se status, Federal Rule of Civil Procedure 56 remains applicable to Quam's lawsuit"); *Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984) (per curiam) ("Although pro se pleadings are to be construed liberally, pro se litigants are not excused from failing to comply with substantive and procedural law.").

"To establish a genuine issue of material fact, . . . [the non-moving party] may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in his favor." *Turner v. Mull*, 784 F.3d 485, 489 (8th Cir. 2015) (quotation omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." (quotation omitted)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Thus, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247-48. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation omitted); *see Anderson*, 477 U.S. at 248-49; *see also, e.g., Torgerson v. City of Rochester*, 643 F.3d 1031, 1042-43 (8th Cir. 2011).

On a motion for summary judgment, courts "view the record most favorably to the

nonmoving party and draw all reasonable inferences in that party's favor." *Johnson v. Safeco Ins. Co. of Illinois*, 983 F.3d 323, 329 (8th Cir. 2020); *see also Scott v. Harris*, 550 U.S. 372, 378 (2007). Thus, "[a]s the non-moving party, [Plaintiff] is entitled to all reasonable inferences—those that can be drawn from the evidence without resort to speculation." *Turner v. XTO Energy, Inc.*, 989 F.3d 625, 627 (8th Cir. 2021) (quotation omitted). "Where the moving party fails to satisfy its burden to show initially the absence of a genuine issue concerning any material fact, summary judgment must be denied even if no opposing evidentiary matter is presented." *Foster v. Johns-Manville Sales Corp.*, 787 F.2d 390, 393 (8th Cir. 1986).

### B. Defendant Nohre in His Individual Capacity

In light of his pro se status, the Court construes Plaintiff's claim against Defendant Nohre as one for excessive force in effectuating his arrest. The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures." U.S. Const. amend. IV; *see Graham v. Connor*, 490 U.S. 386, 394 (1989) ("Where, as here, the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment . . . ."). Defendants do not dispute that Plaintiff was seized within the meaning of the Fourth Amendment.

### 1. Constitutional Violation

As the Supreme Court noted in *Graham*, "[o]ur Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect

it." 490 U.S. at 396; *see also Awnings v. Fullerton*, 912 F.3d 1089, 1100 (8th Cir. 2019)

("When an arrestee flees or resists, some use of force by the police is reasonable."

(quotation omitted)). "Determining whether the force used to effect a particular seizure is

'reasonable' under the Fourth Amendment requires a careful balancing of the nature and

quality of the intrusion on the individual's Fourth Amendment interests against the

countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (quotation

omitted); *see also Cty. of Los Angeles v. Mendez*, 581 U.S. 420, 427 (2017); *see, e.g.*,

*Pollreis v. Marzolf*, 66 F.4th 726, 731 (8th Cir. 2023).

> Because the test of reasonableness under the Fourth
> Amendment is not capable of precise definition or mechanical
> application, however, its proper application requires careful
> attention to the facts and circumstances of each particular
> case, including the severity of the crime at issue, whether the
> suspect poses an immediate threat to the safety of the officers
> or others, and whether he is actively resisting arrest or
> attempting to evade arrest by flight.

*Graham*, 490 U.S. at 396 (quotation and citation omitted).

In addition, "the 'reasonableness' of a particular use of force must be judged from

the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of

hindsight." *Id.*; *see also Mendez*, 581 U.S. at 428; *see, e.g.*, *Pollreis*, 66 F.4th at 731;

*Laney v. City of St. Louis*, 56 F.4th 1153, 1156 (8th Cir. 2023); *Awnings*, 912 F.3d at

1100. The reasonableness calculus must allow "for the fact that police officers are often

forced to make split-second judgments—in circumstances that are tense, uncertain, and

rapidly evolving—about the amount of force that is necessary in a particular situation."

*Graham*, 490 U.S. at 396-97; *see, e.g.*, *Laney*, 56 F.4th at 1156. Ultimately, the inquiry is

11

an objective one, namely, "whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them." *Graham*, 490 U.S. at 397 (quotation omitted); *see also Mendez*, 581 U.S. at 428. Thus, to establish a constitutional violation, Plaintiff must "show the amount of force used was objectively unreasonable under the circumstances." *Pollreis*, 66 F.4th at 731 (quotation omitted).

As an initial matter, the Court dispenses with Plaintiff's assertion that Mac "is considered a deadly weapon." Compl., ECF No. 1 at 5-6. The Eighth Circuit Court of Appeals has squarely rejected this argument and held that "the likelihood of death from the use of a properly trained police dog to apprehend a suspect [is] sufficiently remote as to preclude its characterization as deadly force." *Kuha v. City of Minnetonka*, 365 F.3d 590, 598 (8th Cir. 2003), *abrogated in part on other grounds by Szabla v. City of Brooklyn Park*, 486 F.3d 385, 395-96 (8th Cir. 2007) [hereinafter *Szabla II*] ("abandon[ing] Part II.C of . . . *Kuha*"); *see also Musolf v. Ellis*, No. 07-cv-4764 (JRT/JJK), 2009 WL 2171005, at *4 (D. Minn. July 17, 2009); *Kruse v. Jackson*, No. 05-cv-2123 (JMR/FLN), 2006 WL 3758204, at *3 n.4 (D. Minn. Dec. 20, 2006).

Turning now to the merits and Defendant Nohre's use of Mac without giving a warning, "[i]n *Kuha*, the Eighth Circuit clearly explicated the right to a warning prior to release of a bite-and-hold trained animal." *Kruse*, 2006 WL 3758204, at *5 (footnote omitted). The Eighth Circuit held that "a jury could properly find it objectively unreasonable to use a police dog trained in the bite and hold method without first giving the suspect a warning and opportunity for peaceful surrender." *Kuha*, 365 F.3d at 598. The Eighth Circuit observed that "the presence or absence of a warning is a critical fact in

virtually every excessive force case involving a police dog." *Id.* at 599; *see, e.g.*, *Collins v. Schmidt*, 326 F. Supp. 3d 733, 741 (D. Minn. 2018); *Grady v. Becker*, 907 F. Supp. 2d 975, 982 (D. Minn. 2012); *Musolf*, 2009 WL 2171005, at *3.

The officers and canine in *Kuha* were tracking an individual who fled from a routine traffic stop into a swamp.  365 F.3d at 595.  "Beyond the swamp was a hilly area with high grass and dense brush and foliage.  Beyond that were apartment and office buildings." *Id.*  The canine remained leashed "as they tracked [the individual] up a steep, woody hill and toward a grassy field." *Id.*  The canine was "around ten feet out on his lead," when he "bounded into the three-foot-high grass and 'seized' [the individual]." *Id.*  The officers "did not see the seizure but instead heard [the individual] scream and arrived on scene immediately thereafter." *Id.*; *see id.* at 601 ("It appears uncontested that the officers did not see the initial seizure since [the dog] was ten feet ahead on his lead.").  The Eighth Circuit held that these "facts [were] sufficient to survive summary judgment on [the] Fourth Amendment claim, which [wa]s based on the officers' failure to give a verbal warning prior to using a police dog to seize [the individual]." *Id.* at 601.

Significantly, the Eighth Circuit "rejected the district court's determination that requiring a warning could have threatened the officers' safety 'by giving away their location to a hiding suspect who they did not know for certain was unarmed.'" *Grady*, 907 F. Supp. 2d at 981 (quoting *Kuha*, 365 F.3d at 599).  The Eighth Circuit explained:

> We agree that officer safety is paramount but disagree that the district court properly decided as a matter of law that requiring a verbal warning will put officers at increased risk. To the contrary, such a practice would likely diminish the risk of confrontation by increasing the likelihood that a suspect

13

> will surrender.  While there may be exceptional cases where a
> warning is not feasible, we see no reason why, in this case, a
> rational jury would be precluded from finding that the officers
> could have placed themselves out of harm's way—e.g., at the
> top of the hill where they had a good vantage point, or behind
> one of the nearby apartment buildings—and given a loud
> verbal warning that a police dog was present and trained to
> seize by force. Although a verbal warning will not always
> result in a peaceful surrender, it may be, as argued by
> plaintiff, that, without such a warning, seizure by force is a
> nearly foregone conclusion.

*Kuha*, 365 F.3d at 599 (citation omitted).

In *Szabla v. City of Brooklyn Park*, a homeless individual was sleeping in a city park.  429 F.3d 1168, 1171 (8th Cir. 2005) [hereinafter *Szabla I*], *reh'g en banc granted in part and vacated in part*, 437 F.3d 1289 (8th Cir. 2006).  Law enforcement responded to a car wreck near the park, "find[ing] a car rammed into a tree and abandoned.  The car's windshield was broken, and there was an imprint where a head had hit the windshield.  Hair was sticking out of the lining of the car's roof."  *Id.*  The canine officer "also noticed that there was a screwdriver on the ground next to the car and that the car was full of 'property,' which suggested to him that the car might have been used in a burglary."  *Id.* at 1171-72.

The canine officer put on the dog's tracking harness, "took him to the wrecked car to get the scent of the driver," and gave the dog "the command to 'track,' which means to find and apprehend a person."  *Id.* at 1172.  "The track command focuses on one person and instructs the dog to bite and hold the person until the handler arrives."  *Id.*  The dog remained on a lead, which was reduced "to less than six feet."  *Id.*  "[T]he dog was so close [to the officer that] his tail was brushing [the officer's] knees."  *Id.*  The officer and

14

the dog ran through the park, eventually approaching the shelter where the individual was sleeping. *Id.* "As soon as [the dog] came by the wall, [the dog] turned in the shelter and bit [the individual], who was lying on the floor of the shelter." *Id.* Likening the case to *Kuha*, the Eighth Circuit concluded there were sufficient facts "to make a submissible case of excessive force against [the officer]." *Id.* at 1173.

Plaintiff's Fourth Amendment claim is based on Defendant Nohre's failure to announce the presence of his canine. Defendants do not claim a warning was given. In fact, Defendants conspicuously do not address the issue of a warning at all.[4] Defendant Nohre's incident report does not indicate that he provided a warning regarding Mac's presence. Nor do the incident reports of the other deputies reflect hearing such a warning. In light of *Kuha*, which was issued more than a decade before the events in question, it would have been clear to a reasonable officer that the use of a canine like Mac without a prior warning could violate a suspect's Fourth Amendment rights. *See Kruse*, 2006 WL 3758204, at *5.

True, "there exists no *per se* rule that deployment of a police canine is unreasonable unless preceded by a warning." *Grady*, 907 F. Supp. 2d at 980; *see Kuha*, 365 F.3d at 599 ("[T]here may be exceptional cases where a warning is not feasible."); *Musolf*, 2009 WL 2171005, at *3 ("[E]ven if there was no evidence that a canine warning was given, that alone would be insufficient to entitle Musolf to summary judgment on his excessive force claim."). "That said, the *general* rule is that absent a threat to his safety,

---

[4] The absence of any discussion by Defendants of *Kuha* and their single citation to *Szabla II* for a general proposition is similarly curious.

a police officer must warn a suspect before releasing the dog upon him." *Grady*, 907 F.

Supp. 2d at 980; *accord Collins*, 326 F. Supp. 3d at 742. Ultimately, the question is one

of reasonableness under the circumstances.

Based on the record before the Court, Defendants do not dispute Plaintiff's

contention that Defendant Nohre did not announce the presence of Mac.[5] Rather,

Defendants focus on Plaintiff's suspected involvement in the theft; his familiarity to law

enforcement in Defendant Beltrami County; his flight from law enforcement into the

woods; and the existence of probable cause to arrest him for having "just committed

multiple criminal offenses," Defs.' Mem. in Supp. at 9, ECF No. 51. But, just as in *Kuha*

and *Szabla*, Defendant Nohre "was running with the dog, at night, searching for a person

who had fled and whose whereabouts were unknown." *Szabla I*, 429 F.3d at 1170.

Defendants do not argue nor is there evidence before the Court that Defendant Nohre

declined to give a warning out of a concern for officer safety or due to some other

circumstance. Again, Defendants have not addressed the warning issue at all. Based on

the record before the Court, it cannot be said that this was one of those "exceptional cases

where a warning was not feasible." *Kuha*, 365 F.3d at 599. Likewise, based on the

record before the Court, this Court "see[s] no reason why . . . a rational jury would be

precluded from finding that the officers could have placed themselves out of harm's way

. . . and given a loud verbal warning that a police dog was present and trained to seize by

force." *Id.*

---

[5] Plaintiff has signed the Complaint under penalty of perjury and the Court treats it as a verified complaint for purposes of the instant motion. *Roberson v. Hayti Police Dep't*, 241 F.3d 992, 995 (8th Cir. 2001). "A plaintiff's verified complaint is the equivalent of an affidavit for purposes of summary judgment . . . ." *Id.*; *see also, e.g.*, *Williams v. York*, 891 F.3d 701, 703 n.2 (8th Cir. 2018).

Further, construing the facts in the light most favorable to Plaintiff, Mac made contact with Plaintiff when he came upon him in the brush. Defendants assert that, based on the incident reports and the photos of Plaintiff's shoulder and clothing, "no genuine issue of material fact exist[s] as to whether or not Plaintiff was bitten by Mac" and the "evidence conclusively establish[es] that Mac did not bite Plaintiff." Defs.' Mem. in Supp. at 7. The Court disagrees. Plaintiff maintains that he was bitten.[6] *See, e.g.*, Ex. H to Ebert Aff., ECF No. 52-8 at 1; *see also* Compl., ECF No. 1 at 4, 6; Ex. H to Ebert Aff., ECF No. 52-8 at 2; Ex. I to Ebert Aff., ECF No. 52-9. Defendants' own photographs show two red marks on Plaintiff's shoulder where Plaintiff contends Mac bit him, photographs Plaintiff himself references as evidence of the bite. These photographs were taken shortly after the events in question. The incident reports further support that these marks were in the area that Plaintiff claimed he was bitten. Even Defendant Nohre was "unable to tell" at the time whether Mac bit Plaintiff. Ex. A to Ebert Aff., ECF No. 52-1 at 14. While Defendant Nohre's belief that the marks on Plaintiff's shoulder were not consistent with the sort of "punctures or drag marks which are typically apparent from a

---

[6] The Court is deeply troubled by Defendants' assertion that, "notably, [Plaintiff] admits he has never been bitten or in any way injured by a Beltrami County canine." Defs.' Mem. in Supp. at 13. In support of this assertion, Defendants cite to Plaintiff's responses to their requests for admissions. This assertion is plainly contradicted by the very evidence cited to by Defendants. Request for Admission No. 2 asks Plaintiff to "[a]dmit that on or about April 22, 2019, Defendant Nohre's canine did not bite you." Ex. G to Ebert Aff., ECF No. 52-7 at 2. Plaintiff responded "Deny," stating Defendant "Nohre admitted his dog bit me" and referencing "[b]ite marks (fresh) in pictures." Ex. H to Ebert Aff., ECF No. 52-8 at 1. Request for Admission No. 5 asks Plaintiff to "[a]dmit that on or about April 22, 2019, Defendant Nohre's conduct was reasonable." Ex. G to Ebert Aff., ECF No. 52-7 at 2. Plaintiff responded "Deny," stating that Defendant "Nohre allowed his canine to bite a non-resisting suspect while on-leash when he had opportunity to avoid harm." Ex. H to Ebert Aff., ECF No. 52-8 at 1. Request for Admission No. 7 asked Plaintiff to "[a]dmit that on or about April 22, 2019, you suffered no injury as a result of Defendant Nohre's nor [sic] Defendant Beltrami County's conduct." Ex. G to Ebert Aff., ECF No. 52-7 at 2. Plaintiff responded "Deny," stating that he "was bit and later and still ha[s] side effects from [the] dog[]bite." Ex. H to Ebert Aff., ECF No. 52-8 at 1. Moreover, Defendants even acknowledged earlier in their memorandum that "Plaintiff appears to rely upon these photographs and incident reports to argue that Mac bit Plaintiff." Defs.' Mem. in Supp. at 7.

canine apprehension," Ex. A to Ebert Aff., ECF No. 52-1 at 18; *see* Ex. A to Ebert Aff., ECF No. 52-1 at 14, and the absence of any apparent to damage to Plaintiff's clothing could be facts from which a reasonable jury could conclude that no bite occurred, a reasonable jury could also conclude based on Plaintiff's testimony and the marks on his shoulder that Mac did bite him on top of his clothing.

The Court finds that there is a genuine issue of material fact as to whether it was objectively unreasonable under the circumstances for Defendant Nohre to use Mac in effectuating the seizure of Plaintiff without first giving a warning. *See Szabla I*, 429 F.3d at 1173; *Kuha*, 365 F.3d at 598-99; *see also, e.g.*, *Grady*, 907 F. Supp. 2d at 980-81; *Musolf*, 2009 WL 2171005, at *3; *Kruse*, 2006 WL 3758204, at *5-6. "A reasonable jury could conclude that [Defendant Nohre] was required to give a warning before deploying [Mac]." *Grady*, 907 F. Supp. 2d at 981.

## 2. Qualified Immunity

Defendants assert that Defendant Nohre is nevertheless entitled to qualified immunity because "Plaintiff did not have a clearly established right to flee from [law enforcement] after committing multiple criminal offenses." Defs.' Mem. in Supp. at 17. "Qualified immunity shields police officers from liability for civil damages when their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Westwater v. Church*, 60 F.4th 1124, 1128 (8th Cir. 2023) (quoting *White v. Pauly*, 580 U.S. 73, 78-79 (2017) (per curiam)); *see also, e.g., Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam). To survive summary judgment, Plaintiff must "proffer facts showing that (1) a statutory or constitutional right

was violated; and (2) the right was clearly established." *Westwater*, 60 F.4th at 1128 (quotation omitted); *see, e.g.*, *McDaniel v. Neal*, 44 F.4th 1085, 1089 (8th Cir. 2022). Defendant Nohre "is entitled to qualified immunity unless the answer to both of these questions is yes." *McDaniel*, 44 F.4th at 1089.

Beginning with the first question, for the reasons stated above, when viewing the facts in the light most favorable to Plaintiff, a reasonable jury could conclude that Defendant Nohre's failure to announce the presence of his canine was unreasonable and thus constituted a violation of Plaintiff's Fourth Amendment right to be free from unreasonable seizures.

With respect to the second question, "[f]or a right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Kelsay v. Ernst*, 933 F.3d 975, 979 (8th Cir. 2019) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)); *see also* *Kisela*, 138 S. Ct. at 1153; *Westwater*, 60 F.4th at 1130. "[T]he law at the time of the events in question must have given the officers 'fair warning' that their conduct was unconstitutional." *Kelsay*, 933 F.3d at 979 (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). "When the Fourth Amendment issue is the use of excessive force, the Supreme Court has made clear that specificity is required." *Westwater*, 60 F.4th at 1130; *see also* *Kisela*, 138 S. Ct. at 1152. "Use of force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *Kisela*, 138 S. Ct. at 1153 (quotation omitted); *see* *Westwater*, 60 F.4th at 1130. Following

*Kuha*, it would have been clear to a reasonable officer that the use of a canine like Mac without a prior warning could violate a suspect's Fourth Amendment rights.  *See Szabla I*, 429 F.3d at 1173; *Kruse*, 2006 WL 3758204, at *5; *see also Szabla II*, 486 F.3d at 393. Accordingly, Defendant Nohre is not entitled to qualified immunity.  *See Kruse*, 2006 WL 3758204, at *5.

The Court therefore recommends that Defendants' motion be denied in part as to Plaintiff's claim against Defendant Nohre in his individual capacity for the use of excessive force in violation of the Fourth Amendment, namely, using Mac to effectuate Plaintiff's arrest without first giving a warning.

### C. Defendant Nohre in His Official Capacity & Defendant Beltrami County

In the Complaint, Plaintiff asserts that Defendant Beltrami County "did not adequately train and/or supervise its deputies . . . regarding reasonable seizures through a custom and/or policy reflecting disregard and/or concern for decency to arrestees or [the] general public."  Compl., ECF No. 1 at 6.  Plaintiff's claim against Defendant Nohre in his "official capacity is 'another way of pleading an action against an entity of which an officer is an agent.'"  *Baker v. Chisom*, 501 F.3d 920, 925 (8th Cir. 2007) (quoting *Monell v. Dep't of Social Services*, 436 U.S. 658, 690 n. 55 (1978)); *see also, e.g.*, *Schaffer v. Beringer*, 842 F.3d 585, 596 (8th Cir. 2016); *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999).  Accordingly, Plaintiff's excessive-force claim against Defendant Nohre in his official capacity is effectively against his employer and subsumed within his claim against Defendant Beltrami County.

"Municipal liability exists 'only where the municipality *itself* causes the

constitutional violation." *Perkins v. Hastings*, 915 F.3d 512, 520-21 (8th Cir. 2019)

(quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).   Defendant Beltrami

County "may be liable under § 1983 for constitutional violations if a violation resulted

from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately

indifferent failure to train or supervise." *Leftwich ex rel. Leftwich v. Cty. of Dakota*, 9

F.4th 966, 972 (8th Cir. 2021) (quotation omitted); *see, e.g.*, *Robbins v. City of Des

Moines*, 984 F.3d 673, 981-82 (8th Cir. 2021); *Atkinson v. City of Mountain View*, 709

F.3d 1201, 1214 (8th Cir. 2013); *see also Canton*, 489 U.S. at 388; *Monell*, 436 U.S. at

690-91.

### 1. Policy

"To prove the existence of a policy, a plaintiff must point to 'an official policy, a

deliberate choice of a guiding principle or procedure made by the municipal official who

has final authority regarding such matters.'" *Schaffer*, 842 F.3d at 596 (quoting *Mettler

v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999)); *see also Monell*, 436 U.S. at 690.   A

plaintiff "must identify" the policy that caused the plaintiff's injury. *Perkins*, 915 F.3d at

521 (quotation omitted); *see also Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403,

(1997) ("We have required a plaintiff seeking to impose liability on a municipality under

§ 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury.").

"Locating a 'policy' ensures that a municipality is held liable only for those deprivations

resulting from the decisions of its duly constituted legislative body or of those officials

whose acts may fairly be said to be those of the municipality." *Brown*, 420 U.S. at 403-

04.

Plaintiff has not pointed to any directive by Defendant Beltrami County that "affirmatively sanction[s] the use of [police canines] in an unconstitutional manner." *Szabla II*, 486 F.3d at 392; *see also Schaffer*, 842 F.3d at 597.  In fact, Plaintiff has not identified for this Court which of Defendant Beltrami County's policies is the purported "'moving force' behind" the alleged use of excessive force by Defendant Nohre. *Schaffer*, 942 F.3d at 596 (quoting *Mettler*, 165 F.3d at 1204); *see also Monell*, 436 U.S. at 694.  No policy was identified in the Complaint.  Plaintiff has not responded to Defendants' motion, and has not put forth any evidence concerning the existence of the applicable policy(ies).  And, as Defendants point out, Plaintiff's discovery responses offer little clarity on the issue.  *See, e.g.*, Ex. I to Ebert Aff., ECF No. 52-9 at 4-5, 12-13.

### 2.  Custom

"[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Brown*, 520 U.S. at 404.  "To establish a municipal custom based on a failure to prevent police misconduct, a plaintiff must show that the municipality acted with deliberate indifference to the rights of persons with whom the officers come into contact." *Perkins*, 915 F.3d at 521.  A plaintiff must show:

    (1)  The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

    (2)  Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct;

22

and

(3) The plaintiff's injury by acts pursuant to the governmental entity's custom, i.e., proof that the custom was the moving force behind the constitutional violation.

*Mettler*, 165 F.3d at 1204 (quotation omitted).  "To establish deliberate indifference, a plaintiff ordinarily must show a pattern of constitutional violations."  *Perkins*, 915 F.3d at 521 (footnote omitted).  "A single incident normally does not suffice to prove the existence of a municipal custom."[7]  *Mettler*, 165 F.3d at 1205; *see, e.g.*, *Bolderson v. City of Wentzville*, 840 F.3d 982, 986 (8th Cir. 2016).  "The custom must be demonstrated by a continuing, widespread, and persistent pattern of unconstitutional misconduct."  *Bolderson*, 840 F.3d at 986; *see also Brown*, 520 U.S. at 409 (noting "the pattern of injuries ordinarily necessary to establish municipal culpability and causation").

Affording Plaintiff the benefits of a liberal construction, Plaintiff claims there exists in Defendant Beltrami County a custom of disregard and lack of concern for arrestees and the general public.  *See also, e.g.*, Ex. I to Ebert Aff., ECF No. 52-9 at 13 ("encouraged a custom of aggression and does so to this day"), 14 ("custom of ignoring complaints and not having a readily available form handy for inmates to submit to the appropriate party for review is propagation of abuse and exhibits a pattern and practice of covering/protecting illicit acts"); *cf.* Ex. H to Ebert Aff., ECF No. 52-8 at 2 ("custom of not following rules").  Put simply, Plaintiff has not put forth evidence showing *any* past constitutional violations, let alone a pattern of constitutional violations.

---

[7] There has been no contention by Plaintiff that this is the sort of "plainly obvious" case.  *Perkins*, 915 F.3d at 521 n.5; *see also Brown*, 520 U.S. at 409-10; *Canton*, 489 U.S. at 390; *Graham v. Barnette*, 5 F.4th 872, 891 (8th Cir. 2021).

### 3.  Failure to Train or Supervise

"A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011); *see Robbins*, 984 F.3d at 682 ("It is difficult to establish a municipality's culpability based on failure to train . . . ."). Municipal liability on the basis of a failure to train or supervise requires a showing of "deliberate indifference to the rights of persons with whom the untrained employees come into contact." *Connick*, 563 U.S. at 61 (quotation omitted); *see also Canton*, 489 U.S. at 388; *see, e.g.*, *Perkins*, 915 F.3d at 523; *cf. Atkinson*, 709 F.3d at 1216 ("Under § 1983, a claim for failure to supervise requires the same analysis as a claim for failure to train." (quotation omitted)). "Deliberate indifference requires proof the municipality disregarded a known or obvious consequence of its action or inaction." *Robbins*, 984 F.3d at 682; *see also Connick*, 563 U.S. at 61. "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62; *accord Perkins*, 915 F.3d at 523. A claim for municipal liability on the basis of a failure to train or supervise cannot "succeed without evidence the municipality received notice of [such] a pattern." *Atkinson*, 709 F.3d at 1216-17 (quotation omitted); *see also Parrish v. Ball*, 594 F.3d 993, 1002 (8th Cir. 2010).

Again, Plaintiff has put forth no evidence of past constitutional violations, let alone evidence showing that Defendant Beltrami County "had a history of [its law enforcement] officers unreasonably using canines to apprehend suspects without advance warning." *Szabla II*, 486 F.3d at 392; *see Saunders v. Thies*, 38 F.4th 701, 716 (8th Cir.

24

2022); *Graham*, 5 F.4th at 891; *Perkins*, 915 F.3d at 523.   Likewise, Plaintiff has put forth no evidence showing that Defendant Beltrami County "had reason to believe, before the events giving rise to this case, that its training or supervision of [Defendant Nohre] was inadequate." *Atkinson*, 709 F.3d at 1217; *see Graham*, 5 F.4th at 891.   "So far as the record reveals, this was a one-time incident, and there is no evidence of a pattern of constitutional violations making it 'obvious' that additional training or safeguards were necessary." *Szabla II*, 486 F.3d at 392; *see Graham*, 5 F.4th at 891 ("[T]here is no evidence of past violations, and what happened to Graham is not 'so obviously' the consequence of a systemic lack of training, as opposed to the decisions of individual officers, that the need for different or additional training was plain.").

Therefore, the Court recommends that Defendants' motion be granted in part as to Plaintiff's claims against both Defendant Nohre in his official capacity and Defendant Beltrami County.

[Continued on next page.]

## IV. RECOMMENDATION

Based on the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendants' Motion for Summary Judgment, ECF No. 49, be **DENIED IN PART** as to Plaintiff's excessive force claim against Defendant Nohre in his individual capacity and **GRANTED IN PART** as to Plaintiff's claims against Defendant Nohre in his official capacity and Defendant Beltrami County.


Date: July___5___, 2023                               _____*s/ Tony N. Leung*_____
                                                      Tony N. Leung
                                                      United States Magistrate Judge
                                                      District of Minnesota

                                                      *Aery v. Nohre et al.*
                                                      Case No. 22-cv-491 (PJS/TNL)


## <u>NOTICE</u>

**Filings Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).